**Cara Leslie ALEXANDER, et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court, District of Columbia.

June 25, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, for FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC,

Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Robert Muze, Stein, Mitchell & Mezines, Washington, DC, for defendant Anthony Marceca.

Robert C. Bernius, Garrett Scott Flynn, Nixon, Hargrave, Devans & Doyle, L.L.P., Washington, DC, for non-party J. Lowe Davis.

### MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Motion of Non–Party J. Lowe Davis for Protective Order and plaintiffs' Motion for Leave to File Surreply to Reply to Plaintiffs' Opposition to Motion of Non–Party J. Lowe Davis for Protective Order. Upon consideration of the submissions of the parties, plaintiffs' Motion for Leave to File Surreply to Reply to Plaintiffs' Opposition to Motion of Non–Party J. Lowe Davis For Protective Order is granted and the Motion of Non–Party J. Lowe Davis for Protective Order is denied.

### I. *Background*

As stated in several opinions by this court, the underlying allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that their privacy interests were violated when the Federal Bureau of Investigation ("FBI") improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

On April 13, 1998, this court issued an order permitting plaintiffs to pursue discovery into matters bearing on the obtaining and misuse of governmental files in order for plaintiffs to attempt to create the inference that it is reasonable to conclude that FBI files were obtained and misused in the in-

stant case. *Alexander v. FBI*, C.A. No. 96–2123, Mem. and Order at 6 (D.D.C. Apr. 13, 1998). Pursuant to that memorandum and order, plaintiffs have pursued their theory that the White House had some role in the release of information from the federal security-clearance form of Linda Tripp, a Pentagon employee. To this end, plaintiffs served Clifford Bernath, former Principal Deputy Assistant to the Secretary of Defense for Public Affairs, and Kenneth Bacon, Assistant Secretary of Defense for Public Affairs, with subpoenas ad testificandum and duces tecum. Both Bacon and Bernath have been deposed by plaintiffs.

In an article published in the March 23, 1998 edition of *The New Yorker*, Jane Mayer revealed that Tripp failed to disclose a prior arrest on her federal security-clearance form in 1987. Jane Mayer, "Portrait of a Whistle-blower," *The New Yorker*, March 23, 1998. On April 30, 1998, plaintiffs served a subpoena on Mayer demanding the production of documents and the submission by Mayer to a deposition. Plaintiffs apparently hoped to obtain further information pertaining to how Mayer acquired the information contained in her article of March 23. The court granted Mayer's motion to quash the subpoena and concluded that the subpoena served on Mayer was "amazingly broad" and that the testimony sought by plaintiffs was covered by the journalist privilege derived from the First Amendment and otherwise largely irrelevant to the instant case. At that point, it appears that plaintiffs set out to determine the extent of the information possessed by Mayer regarding this matter through alternate sources. One of these alternate sources included J. Lowe Davis.

In a subsequent article published in *The New Yorker*, Mayer cited Davis as "[t]he source who led *The New Yorker* to Linda Tripp's arrest record." Jane Mayer, "For the Record," *The New Yorker*, June 8, 1998 at 35. According to her declaration filed in support of the motion for protective order, Davis was married to Tripp's father, Albert Carotenuto, from June 1970 to December 1979. Davis Dec. ¶ 7. The declaration indicates that during the course of her relationship with Carotenuto, she learned from him that Tripp had been arrested. *Id.* ¶ 8. Mayer's article states that "[w]ith Davis' recollections and the help of local police departments, it was possible to find [Tripp's] twenty-nine-year-old police record." Mayer, at 35.

Presently, plaintiffs seek to depose Davis to determine whether Mayer disclosed any information to her that can establish that the White House or individuals acting at its behest played some part in the misuse and dissemination of information from Tripp's security-clearance form. Plaintiffs also request the production of any and all documents that refer or relate to the arrest of Tripp or documents in the possession of Davis that refer or relate to Tripp, Mayer, *The New Yorker*, the White House, and/or the Clinton Administration.

## II. *Analysis*

### A. *Plaintiffs' Motion for Leave to File Surreply*

■ Plaintiffs filed a motion to file a surreply to the reply to their opposition to Davis' motion for protective order due to the fact that the reply filed by Davis included a declaration by Davis not included in the original motion for protective order. Through their surreply, plaintiffs seek an opportunity to refute the statements made by Davis in that declaration. If the court were to deny plaintiffs leave to file the surreply, plaintiffs would be unable to contest matters presented to the court for the first time in the form of Davis' declaration. Therefore, it is the conclusion of this court that plaintiffs have demonstrated good cause to warrant the granting of their motion and their surreply shall be filed.

### B. *Davis' Motion for Protective Order*

■ The court has noted on several occasions that generally speaking, "[a] party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984). Davis' efforts to quash her deposition is premised on Federal Rule of Civil Procedure 26(c) which provides:

Upon motion by a party or the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c). As the party seeking the protective order, Davis bears the burden of making the showing of good cause contemplated by the rule. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 95–96 (S.D.Iowa 1992); *Ahern*, 102 F.R.D. at 822. In this regard, Davis must make a specific demonstration of facts to support her request for the protective order quashing the deposition. Specifically, good cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense. The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. Indeed, "[t]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Prozina Shipping Co., Ltd. v. Thirty–Four Automobiles*, 179 F.R.D. 41, (D.Mass.1988). *See also Bucher v. Richardson Hospital Auth.*, 160 F.R.D. 88, 92 (N.D.Tex.1994) (stating that protective orders prohibiting depositions are "rarely granted" and then only if the movant shows a "particular and compelling need" for such an order). Moreover, the showing required under Rule 26(c) must be sufficient to overcome plaintiffs' legitimate and important interests in trial preparation. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985) ("[T]rial preparation and defense ... are important interests, and great care must be taken to avoid their unnecessary infringement.").

 This court has also noted that the quashing of a subpoena and the complete prohibition of a deposition are certainly extraordinary measures which should be resorted to only in rare occasions. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y.1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); *Frideres v. Schlitz*, 150 F.R.D. 153, 156 (S.D.Iowa 1993) ("Protective orders prohibiting depositions are rarely granted."); *Rolscreen*, 145 F.R.D. at 96 ("Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances."); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). With this consideration in mind, courts have generally employed a balancing test to determine whether good cause has been shown by the party seeking to quash the deposition. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277–78 (7th Cir.1982).

Davis' arguments in support of her motion for protective order are twofold. First, Davis asserts that the information sought by plaintiffs' subpoena is not relevant to this lawsuit, nor is it reasonably calculated to lead to the discovery of admissible evidence. Second, Davis contends that requiring her to testify will subject her to annoyance, embarrassment, oppression, and undue burden.

### 1. *The Relevance of the Discovery Sought by Plaintiffs*

 Turning to the initial argument, Davis correctly states that the court must balance the need of the party seeking discovery against the burden upon the person from whom discovery is sought. Reply to Pls.' Opp. to Mot. for Protective Order at 3 (citing *Farnsworth*, 758 F.2d at 1547). Moreover, Davis also accurately notes that this balancing test requires that there be a showing on the part of plaintiffs that the information

they seek is relevant. *See Food Lion, Inc. v. United Food & Comm. Workers Int'l Union*, 103 F.3d 1007, 1012–13 (D.C.Cir.1997). Indeed, the notion of relevance forms the core of Davis' first argument in support of her motion for a protective order. However, the court must disagree with her contention that the information sought by plaintiffs is not relevant or authorized by the court's prior orders.

The motion for protective order asserts that "[i]t is fair to conclude that the Court's rulings ... indicate that the 'Ellen Rometsch strategy,' at least as it relates to Ms. Tripp is outside the scope of discovery." Mot. for Protective Order at 7–8. Davis bases this conclusion on this court's memorandum opinions of May 28, 1998 filed in this case in which the court determined that certain questions posed to Paul Begala and James Carville by plaintiffs were irrelevant to this lawsuit and the conclusion reached by this court that information plaintiffs sought to obtain from Jane Mayer was protected by the journalist privilege derived from the First Amendment or otherwise largely irrelevant to this case.

With respect to Begala, plaintiffs requested that the court compel Begala to answer certain questions over claims of an asserted Executive privilege. Plaintiffs contended that President Clinton contacted Begala about returning to the White House to use FBI files and other sources to "dig up dirt" on the Administration's adversaries and "smear them in the media." Pls.' Mot. to Compel (Mar. 30, 1998) at 8. Begala testified in his deposition that he did not rely on FBI files when conducting research and only used information readily obtainable in the public fora. Moreover, Begala submitted a declaration from Charles Ruff, Counsel to the President, in support of his opposition to the motion to compel stating that "[t]he conversations which plaintiffs seek to delve into do not relate in any way to the allegations in plaintiffs' complaints, to any misuse of government files, or to any alleged misconduct whatsoever." Opp. of EOP to Pls.' Mot. for Compel Ex. E at 3–4. In reliance on Begala's own testimony and the statement submitted by Ruff, the court concluded "[p]laintiffs

make no showing to rebut either the testimony of Begala or the declaration by Ruff, thereby compelling the conclusion that the information sought is not relevant or likely to lead to admissible evidence." *Alexander*, C.A. No. 96–2123, Mem.Op. at 44, 186 F.R.D. at 44 (D.D.C. May 28, 1998). The information plaintiffs sought to compel was the answer of why Begala returned to the White House. In light of Begala's testimony and Ruff's declaration, any compelled answer would not be relevant to this lawsuit.

Plaintiffs also requested that this court compel Carville to disclose the incorporators of Carville's corporation, the Education and Information Project ("EIP") Carville refused to provide an answer to this question based on an assertion of the attorney-client privilege. The court concluded that the information sought by plaintiffs—the incorporator(s) of EIP—was not relevant to the issues in this case or likely to lead to the discovery of admissible evidence. *Id.* at 51, 186 F.R.D. at 47.

The court's rulings concerning Begala and Carville hardly foreclose the discovery plaintiffs currently seek from Davis. Plaintiffs asked the court to rule on a motion to compel answers to specific questions that were completely unrelated to the release of information from Tripp's security-clearance file.

 Plaintiffs also sought to depose Mayer to determine the extent of her knowledge with respect to the release of information obtained from Tripp's federal security-clearance form. In quashing Mayer's subpoena, this court initially made the blanket statement that "the documents, records and other materials sought by plaintiffs, including the deposition testimony which would be given by Mayer, are largely irrelevant to the matters at issue in this case, protected from disclosure under the journalist privilege, and reflect requests that are clearly over broad." *Alexander*, C.A. No. 96–2123, Mem. Order at 2, 186 F.R.D. at 29 (D.D.C. May 28, 1998). The court went on to specifically state that certain information sought by plaintiffs fell under the auspices of the journalist privilege because the information did not go the heart of plaintiffs' claim and plaintiffs failed to make a sufficient showing that the information could not be obtained elsewhere. This

court did not rule that this information was irrelevant to plaintiffs' lawsuit, as Davis contends. Rather, the court determined that certain information was protected from disclosure under the journalist privilege and concluded that "[a]dditionally, requests for documents that are not covered by the journalist privilege asserted by Mayer are extraordinarily over broad and not reasonably calculated to lead to relevant or admissible evidence." *Id.* at 3.

The information sought from Mayer but covered by the journalist privilege was clearly the same information plaintiffs presently seek to obtain from Davis. As this court has noted previously in this opinion, on April 13, 1998, the court issued a memorandum and order permitting plaintiffs to pursue discovery into matters bearing on the obtaining and misuse of governmental files in order for plaintiffs to attempt to create the inference that it is reasonable to conclude that FBI files were obtained and misused in the instant case. *Alexander,* C.A. No. 96–2123, Mem. and Order at 6 (D.D.C. Apr. 13, 1998). Plaintiffs sought to depose Mayer in an effort to verify their theory that the White House was in some way responsible for or involved in the disclosure of information obtained from Tripp's security-clearance form. This discovery is certainly relevant under a reasonable reading of this court's April 13 memorandum and order. However, this information while relevant could not be obtained from Mayer due to the protections afforded by the journalist privilege. Accordingly, plaintiffs now seek to obtain this information from an alternate source—an individual with whom Mayer spoke while conducting research for the article at the center of this controversy.

Davis argues that "[s]ince [the order of April 13] the Court has confined discovery of the Linda Tripp matter to facts concerning disclosures from government files." Reply to Pls.' Opp. to Mot. for Protective Order at 6. This is clearly the discovery plaintiffs seek to obtain from Davis. Plaintiffs are attempting to probe any knowledge Davis may have obtained from her conversations with Mayer that may shed light on whether the White House or someone acting at its behest was involved in the release of the Tripp informa-tion. In light of the fact that this court has precluded plaintiffs from obtaining this information from Mayer, Davis is a logical person for plaintiffs to seek to depose.

Notwithstanding Davis' claims to the contrary, the testimony and materials sought by plaintiffs are relevant. Indeed, plaintiffs have deposed Clifford Bernath and Kenneth Bacon pursuant to the language contained in the April 13 order. Accordingly, the clear showing of relevance tips the balance in favor of permitting plaintiffs to conduct the deposition.

### 2. *The Potential for Subjecting Davis to Annoyance, Embarrassment, Oppression, and Undue Burden*

Davis' more forceful argument is the contention that "the deposition of Ms. Davis could well engender embarrassment and oppression." Mot. for Protective Order at 8. Rule 26(c) of the Federal Rules of Civil Procedure provides that "the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

Davis contends that this litigation will gain no benefit from forcing her to testify about matters relating to her former step-daughter and ex-husband which occurred almost 30 years ago. Moreover, in the declaration appended to her reply to plaintiffs' opposition to the motion for protective order, Davis states that she "[does] not know anything about how the Pentagon released information about Linda Tripp to Jane Mayer, other than that which has been reported in the press." Reply to Pls.' Opp. to Mot. for Protective Order Ex. A ¶ 15. The declaration also indicates that "Ms. Mayer did not tell me that anyone from the Clinton Administration helped her find me. Ms. Mayer did not say that anyone requested that she call me. She did not say that she worked for, or was calling on behalf of, the Clinton Administration (or any words to that effect)." *Id.* ¶ 14.

Davis' carefully crafted declaration avoids any discussion of the circumstances surrounding the conveying of the Tripp information to Mayer and it is these circumstances

that are most relevant to plaintiffs' inquiry. The court has precluded plaintiffs from deposing Mayer and indicated that plaintiffs must pursue alternate sources of discovery in order to obtain the information ultimately sought from Mayer. The fact that Davis has declared that Mayer contacted her and that she was the source of information contained in Mayer's article makes the inquiry sought by plaintiffs even more appropriate. Plaintiffs' depositions of Bernath and Bacon have already clearly demonstrated that Mayer received information contained in the confidential security-clearance form from government officials. It is obvious that if Mayer had received information from government officials, from the Pentagon or elsewhere, pertaining to Tripp's arrest, this would be relevant to plaintiffs' Privacy Act allegations and an exact recollection of the conversations between Mayer and Davis may provide plaintiffs with a basis for further discovery. Furthermore, Davis' declaration fails to state whether she has discussed Tripp's arrest with anyone other than Mayer during the time period relevant to this lawsuit.

█ Correspondence between the parties further demonstrates that the threat of annoyance, embarrassment, oppression, or undue burden have been minimized by agreement of the parties. Plaintiffs' counsel stated in a letter delivered to counsel for defendants that he does not intend to inquire into matters involving Tripp's family life or anything that is not relevant to this suit. Pls.' Opp. to Mot. for Protective Order Ex. 6 (Letter from Larry Klayman to David Kendall and James Gilligan of June 9, 1998). Although the deposition was originally to be conducted in Pensacola, Florida, where Davis resides, a separate letter to plaintiffs from Davis' counsel confirmed that "[i]f a deposition of Ms. Davis is necessary, we have agreed that it will occur on June 26, 1998 in Washington, D.C. and [plaintiffs] will pay for her reasonable expenses incurred in attending it." Mot. for Protective Order Ex. D (Letter from Garrett Flynn to Larry Klayman of June 10, 1998). This arrangement further reduces any hardship Davis may encounter and belies Davis' claims of any undue burden resulting from the expenditure of time or money in travel-

ing to Washington to be deposed by plaintiffs.

### III. *Conclusion*

In sum, the court is not convinced by the arguments set forth by Davis. The information sought by plaintiffs is clearly relevant under the standards provided by this court in its April 13, 1998 memorandum and order and any oppression, annoyance, embarrassment, undue burden, or other hardship has been minimized by the agreements reached by the parties and plaintiffs' statements pertaining to the limited scope of discovery sought. Accordingly, for the reasons stated herein, plaintiffs' Motion for Leave to File Surreply to Reply to Plaintiffs' Opposition to Motion of Non–Party J. Lowe Davis for Protective Order is GRANTED and the Motion of Non–Party J. Lowe Davis for Protective Order is DENIED.

SO ORDERED.