**Gladys C. JENNINGS, Plaintiff,**

v.

**FAMILY MANAGEMENT, et al., Defendants.**

**No. CIV.A.00–434 (LFO/JMF).**

United States District Court, District of Columbia.

July 16, 2001.

Frazer Walton, Jr. Washington, DC, Hope C. Brown, Law Offices of Hope C. Brown, Washington, DC, for Gladys C. Jennings.

George LeRoy Moran, Fairfax, VA, for Family Management Services, Inc. and In Home Family Care, Inc.

Patricia L. Payne, Payne & Associates, Washington, DC, George LeRoy Moran, Fairfax, VA, for Cheryl A. Alston.

Peter G. Thompson, Sam R. Hananel, Stephanie Tyler Schmelz, Ross, Dixon & Bell, LLP, Washington, DC, for Allfirst Financial Inc.

David J. Cynamon, Shaw Pittman, Washington, DC, for Chevy Chase Bank.

Hope C. Brown, Law Offices of Hope C. Brown, Washington, DC, for Estate of James R. Jackson.

### MEMORANDUM OPINION AND ORDER

FACCIOLA, United States Magistrate Judge.

Before me for resolution are Plaintiff's original Motion for a Protective Order, plaintiff's Renewed Motion for a Protective Order, Defendants' original Motion to Compel, and Defendant's second Motion to Compel. These motions concern in part plaintiff's efforts to shield the plaintiff, Gladys Jennings, and plaintiff's counsel, Hope C. Brown, from depositions in this matter. For the reasons set forth below, I will permit the depositions

of Gladys Jennings and Ms. Brown to be taken.

## BACKGROUND

The facts of this case have been set forth in prior opinions by this court. Plaintiff's amended complaint alleges fraud, among other counts, arising from a contract for care with defendants Alston, Family Management Services, Inc. and In Home Family Care, Inc. ("IHFC"). The facts relevant to the motions before me are as follows. Plaintiff entered into a contract for health care services with defendants on or about January 20, 1998. On May 27, 1999, an intervention proceeding was initiated in the Probate Division of the D.C. Superior Court; ultimately, plaintiff was appointed a limited guardian and conservator, Hope C. Brown, on July 2, 1999. The contract between plaintiff and defendants was terminated on or about August 7, 1999, and plaintiff filed the present lawsuit on August 1, 2000. This matter initially came before for me for resolution of Plaintiff's Motion for a Protective Order and Defendant's Motion to Compel.

On May 16, 2001, I issued an Order in this case in which I granted in part defendant's Motion to Compel, ordering plaintiff to provide defendants with signed, affirmative responses to all but two of their interrogatories, and to stipulate as to certain document requests that there existed no other documents responsive to defendants' request other than those already in defendants' possession. *Order* of May 16, 2001 at 20–21. However, I deferred resolution of the depositions of Jennings and her limited guardian and attorney, Hope C. Brown, pending supplemental filings on the issue by the parties. I will resolve the issue of their depositions now.

## DISCUSSION

### *Deposition of Gladys Jennings*

In my May 16, 2001 Order in this matter, I indicated my inclination to permit the deposition of Ms. Jennings to go forward over plaintiff's objection. The Order stated: "Plaintiff's testimony is surely relevant to the defense of this case, and defendant must be given an opportunity to obtain it. While plaintiff's age and condition are a concern, they do not outweigh defendants' need to prepare their defense. To the contrary, given plaintiff's condition, it is in the interest of both parties to proceed promptly with the discovery phase of this case." *Order* of May 16, 2001, at 3. However, I permitted plaintiff to first conduct a medical evaluation of Ms. Jennings, and thereafter renew its protective Order if plaintiff deemed it necessary. *Id.* I directed plaintiff to support any renewed motion with "specific evidence" of harm would result from subjecting Jennings to a deposition. *Id.*

Plaintiff filed its Renewed Motion for a Protective Order under Rule 26(c) on June 1, 2001, following a series of evaluations of Ms. Jennings conducted by clinical psychologist Chauncey Fortt, Ph.D.[1] Plaintiff argues that a protective Order is necessary to protect Jennings from "annoyance, embarrassment and oppression." Plaintiff's Renewed Motion for Protective Order ("Pl. Ren. Mot.") at 6. In support of the renewed motion, plaintiff cites the report of Fortt, which concludes that "great harm" could result to Jennings if she is subjected to the stress of an adversarial proceeding because such a proceeding has the "potential to overwhelm [Jennings'] current coping abilities which are tenuous at best." Pl. Ren. Mot., Ex. 2, at 6. Fortt contends that Jennings' mental condition, marked by depression and dementia, should be considered "fragile". *Id.* at 6. Further, Fortt concludes that Jennings' "diminished capacity" places her at risk for "manipulation and exploitation", and the stress of a deposition could potentially result in irreversible harm to her ability to grasp reality. *Id.* at 6.

■ My Order of May 16, 2001, gave plaintiff a second opportunity to support her claim of "good cause" for a protective order

---

**1.** Fortt was the original examiner appointed by the Superior Court of D.C. to examine Jennings' physical, behavioral, emotional and mental heath status during the intervention proceedings before the Honorable Kaye K. Christian. *See* Plaintiff's Renewed Motion for a Protective Order ("Pl. Ren. Mot."), at 3. The recent evaluations of Ms. Jennings, approved by this Court's May 16, 2001 Order took place on May 20, 2001, May 25, 2001, and May 27, 2001. Pl. Ren. Mot., Ex. 2, at 1.

by demonstrating specific evidence of the harm that would result to Jennings if she were subjected to a deposition. Plaintiff's renewed motion for a protective order fails to cure this deficiency. Rule 26(c) of the Federal Rules of Civil Procedure requires the party moving for a protective order to demonstrate "good cause" for limiting the discovery sought. Fed.R.Civ.P. 26(c); *Alexander v. FBI*, 186 F.R.D. 71, 74 (D.D.C.1998); *Lohrenz v. Donnelly*, 187 F.R.D. 1, 3 (D.D.C. 1999). To do so, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements. *See Alexander v. FBI*, 186 F.R.D. at 74; *FEC v. GOPAC, Inc.*, 897 F.Supp. 615, 617 (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987)). In fact, "[t]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Alexander v. FBI* at 75 (citing *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, (D.Mass.1998). *See also Bucher v. Richardson Hospital Auth.*, 160 F.R.D. 88, 92 (N.D.Tex.1994) (stating that protective orders prohibiting depositions are "rarely granted" and then only if the movant shows a "particular and compelling need" for such an order)).

■■■ Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an "extraordinary measure[ ] which should be resorted to only in rare occasions." *See Alexander*, 186 F.R.D. at 75 (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.")); *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y.1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D.Iowa 1993) ("Protective orders prohibiting depositions are rarely granted."); *Rolscreen*, 145 F.R.D. at 96 ("Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances."); *Motsinger v. Flynt*, 119 F.R.D.

373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). Accordingly, courts apply a balancing test, weighing the movant's proffer of harm against the adversary's "significant interest" in preparing for trial. *See Lohrenz v. Donnelly*, 187 F.R.D. 1, 3 (D.D.C.1999); *See also Alexander v. FBI*, 186 F.R.D. at 75. Considering therefore plaintiff's proffer of "good cause" to prevent Jennings' deposition altogether against defendants' legitimate interest in preparing for trial, I find that plaintiff has not met its burden.

■■■ As defendants correctly point out, plaintiff relies on conclusory, speculative statements to support its motion rather than demonstrating evidence of specific harm that will result to Jennings if she is made to testify. In seeking the protective order, plaintiff relies largely on the report of Fortt, which is marked by conjecture and generalization. For example, Fortt's report states that Jennings, who arguably suffers from dementia and depression, is likely at risk for harm if she is made to give testimony because "individuals with dementia may be especially vulnerable to physical and psychological stressors..." Renewed Mot., Ex. 2, at 6. Fortt also speculates that "it is very likely that great harm *could* result to [Jennings]" if she were subjected to the adversarial process, which "has the *potential* to overwhelm" Jennings's coping abilities. *Id.* (emphasis added).

The report is also notable for its conclusory nature. Although the report asserts that Jennings faces a "danger of exacerbating her symptoms of dementia and depression" if she is made to testify, *id.*, it does not state with specificity how or why this will happen. Further, the report avers that subjecting Jennings to the adversarial process has the potential to overwhelm her coping strategies, but does not explain how in fact this will happen, or how specifically her health will be threatened by the deposition process.

Furthermore, defendant's need to prepare a defense in this case outweighs the generalized assertions of harm that plaintiff has

made. As discussed in my prior opinion, Jennings' testimony is critical to this lawsuit, and defendants must be permitted to take it in order to develop their defense of this case. Jennings' testimony is particularly significant in light of her signed responses to defendants' interrogatories, which were provided to defendants pursuant to this Court's Order. *Order* of May 16, 2001, at 20. As defendants correctly point out, plaintiff's responses, provided in Jennings' own handwriting, evidence a lack of memory regarding the fact and events underlying this lawsuit.[2] Memorandum in Support of Defendants [Second] Motion to Compel ("Sec. Mot. Compel") at 9. Defendants must be given an opportunity to test plaintiff's asserted lack of memory, and to develop, if possible, the facts and circumstances surrounding plaintiff's contract for care with defendants.

As discussed above, several courts have noted that the total prohibition of a deposition is an extraordinary measure not to be lightly undertaken by a court. Based on the evidence before me, I find that plaintiff's conclusory statements of harm, weighed against the critical testimony that Jennings will provide in this lawsuit, fail to satisfy plaintiff's burden under Rule 26(c). Therefore, plaintiff's deposition shall go forward in as timely a fashion as possible, albeit under certain conditions.

As I stated in my prior order, Jennings' deposition shall take place in my courtroom, and I will make myself available to both parties during Jennings' deposition to address any claims that Jennings' health condition merits ceasing the deposition. Additionally, as requested by plaintiff, Jennings' deposition shall take place in the afternoon hours.[3]

### Deposition of Hope C. Brown

The second issue before me is the deposition of one of plaintiff's attorneys, Hope C. Brown, which defendants seek to compel. Defendants assert that Brown is a key material fact witness in this case whose testimony is critical to a main issue in this case, namely, plaintiff's state of mind prior and subsequent to the intervention proceedings in Superior Court, which culminated in Brown's appointment as plaintiff's limited guardian/conservator on July 2, 1999. Response of Defendants to Court's Order of May 16, 2001 ("Def. Response"), at 6. Plaintiff entered into the contract for care with defendants in January of 1998; the termination of the contract occurred in August of 1999, approximately one month after Brown was appointed as plaintiff's limited guardian. Defendants' Motion to Compel and Opposition ("Def. Mot. Compel") at 11. Defendants assert that Brown "spearheaded" the intervention proceedings, supervised the transfer of Jennings to an assisted living center, played a role in managing plaintiff's financial affairs, and initiated this lawsuit. *Id.* at 10. Defendants contend that Brown is in a unique position to testify as to plaintiff's state of mind before and after the intervention proceedings, her ability to manage her daily life, her ability to "voice objections, concerns and suspicions," and her ability to enter into contracts, and argue that Brown is the unique source of this information. *Id.* at 11.

The Federal Rules do not prohibit attorney depositions. *See Evans v. Atwood,* No. CIV.A. 96–2746, 1999 WL 1032811, at *2 (D.D.C. September 29, 1999); *Dowd v. Calabrese,* 101 F.R.D. 427, 439 (D.D.C.1984). However, as a general matter, courts regard attorney depositions unfavorably because they may interfere with the attorney's case

---

2. Plaintiff's responses to Defendants' Interrogatories indicate that while plaintiff recalls information such as her educational background and work history, she is unable to recall such information as entering into a contract for services with IHFC, Inc., whether and how IHFC, Inc. overcharged plaintiff for the services they provided, and how plaintiff relied on allegedly false representations made by IHFC, Inc. Defendant's Second Motion to Compel ("Sec. Mot. Compel"), Ex. 2, Interrogatory Nos. 4, 10, and

13. In response to a large number of defendants' interrogatories, plaintiff repeatedly states, "I do not remember," "I don't remember all that has happened to me." *Id.*

3. Fortt's evaluation of Jennings urges that if Jennings' deposition is permitted to go forward, the examination "would likely produce more effective results if conducted in the afternoon." Pl. Ren. Mot., Ex. 2, at 7. I shall grant this request.

preparation and risk disqualification of counsel who may be called as witness. See *Evans v. Atwood*, at *3. In light of these concerns, a party seeking to depose an adversary's counsel must prove its necessity. *Evans*, at *2. Federal courts typically consider whether 1) no other means exists to obtain the information sought; 2) the information sought is relevant and non-privileged; and 3) the information is crucial to the preparation of the case. See *id.*; *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986).

In my Order of May 16, 2001, I determined that defendants had established their burden with respect to the last two elements, i.e., the information sought from Brown is relevant, nonprivileged, and essential to defendants' preparation of their case. *Order* at 5, 6. However, I could not determine based on the evidence before me whether the first element of *Evans* and *Shelton* had been met. I therefore deferred resolution of Brown's deposition, ordering defendants to supplemental their motion to compel as to whether or not there exists other means to obtain the information that defendants seek. *Order* at 6. I specifically directed defendants to submit affidavits of other witnesses which demonstrate that the witnesses lack the information that defendants seek from Brown, on the theory that this evidence would establish whether or not the information possessed by Brown is unique. *Id.*

Upon reviewing defendants' supplemental statement, and plaintiff's objections to it, I find that the affidavits submitted by defen-

dants support the taking of Brown's deposition in this lawsuit.

Defendants seek information related to plaintiff's state of mind before and after the intervention proceeding, which was initiated in May 1999 and culminated in Brown's appointment in July 1999, as well as plaintiff's ability to manage various aspects of her daily life and her affairs throughout this period to the present. The affidavit of defendants' attorney, Patricia Payne, who spoke with Fannie Starkes, plaintiff's former neighbor and friend of many years, and plaintiff's niece, Carmen Smith, indicates that Starkes and Smith have limited knowledge as to plaintiff's state of mind during 1998 and 1999, her ability to manage her personal affairs, and her ability to address conflicts, negotiate with third parties, etc.[4] Def. Response, Ex. A, at 1–3. The affidavit of plaintiff's C.P.A., Elizabeth Holtzclaw, indicates that while Holtzclaw prepared plaintiff's tax returns from 1990 to 1998, she had such limited contact with plaintiff that she has no opinion regarding plaintiff's ability to manage her affairs, resolve disputes, interact with third parties, etc. Def. Response, Ex. B, Affidavit of Elizabeth C. Holtzclaw, at 1–2. Similarly, the affidavit of plaintiff's prior attorney, Jean Galloway Ball, indicates that Ball had only one dealing with plaintiff during the period at issue, on February 11, 1998, for the sole purpose of preparing a Durable General Power of Attorney, and has no opinion regarding plaintiff's ability to care for herself or her affairs.[5] Def. Response, Ex. C, Affidavit of Jean G. Ball, at 1–2.

---

**4.** Payne spoke with Fannie Starkes on May 22, 2001, regarding Starkes' recollection of Ms. Jennings from 1998 to the present. In response to Payne's inquiry as to whether Starkes had knowledge of Jennings' ability to manage her financial or personal affairs, her health care needs, and her ability to negotiate with third parties, Starkes indicated to Payne that she "did not have a clear recall [of] Ms. Jennings' abilities" relevant to Payne's inquiry, but was able to recall that Jennings seemed "frustrated by losing some control over her life." According to Payne's affidavit, Starkes was unable to give a further explanation of this statement. Def. Response, Ex. A, Affidavit of Patricia L. Payne, Esq., at 1–2.

Payne's inquiry of Carmen Smith indicates that Smith had limited dealings with Jennings in late 1998 and 1999, Def. Response at 2, 3. Further, according to Payne's affidavit, Smith indicated

she visited Jennings "regularly" during the period at issue, but could not confirm whether she had visited plaintiff "more than twice a year." Def. Response, Ex. A, Affidavit of Patricia L. Payne, Esq., at 3. Smith indicated to Payne that she could not provide information related to Jennings' ability to manage her affairs because she felt that was "something Ms. Jennings kept to herself." Def. Response, Ex. A, Affidavit of Payne, at 3.

**5.** Ball's affidavit indicates that she met Jennings in February 1998 for the purposes of providing legal services to plaintiff, did not have a long-term relationship with plaintiff, and therefore has no basis to form an opinion as to the information defendants seek. Def. Response, Ex. C, Affidavit of Jean G. Ball, at 1–2.

Defendants also attempted without success to reach Dr. Fortt, Dr. Robles, M.D., plaintiff's treating physician, and Dr. David Sayles, M.D., who conducted an evaluation of plaintiff in connection with the Superior Court intervention proceeding. Defendants argue that these individuals are unlikely to have the information that defendants seek because their contact with plaintiff is limited to their psychological and medical evaluations of her, and therefore could not provide substantial insight into plaintiff's state of mind regarding her contract for care, her ability to manage daily aspects of life, etc. Def. Response at 5.

Plaintiff argues that defendants' evidence does not prove that Brown is the sole possessor of the information that defendants seek and claims that defendants efforts to depose Brown are calculated to disrupt the litigation and harass plaintiff and her counsel. Pl. Ren. Mot. at 5–6. First, plaintiff argues that defendants have failed to depose individuals like plaintiff's niece, Carmen Smith, or plaintiff's physicians and psychologist, whom plaintiff asserts have information that defendants seek. Pl. Ren. Mot. at 4. Plaintiff also urges defendants to depose Jennings' "best friend", Hughes Redcross, whom plaintiff asserts has knowledge of her state of mind and health status during the relevant period. *Id.* Plaintiff also takes issue with attorney Jean Ball's affidavit, which states Ball has limited knowledge of plaintiff; plaintiff alleges that Ball was counsel for defendant Alston during Jennings' intervention proceedings, and prepared an "extensive 8 page power of attorney" for Jennings in February 1998.[6] Pl. Ren. Mot. at 5. Finally, plaintiff argues that the deposition of Holtzclaw, taken on February 16, 2001, reveals that Holtzclaw has knowledge of Jennings' state of mind during the period in question.

Based on the evidence before me, this court finds that Brown is in a unique position to testify as to the information defendants seek. While defendants have not deposed individuals such as Carmen Smith, the affidavit of Patricia Payne suggests that Smith has limited knowledge of the plaintiff's state of mind during 1998/1999 period. Drs. Robles and Sayles, as plaintiff's medical physicians, arguably have limited insight into plaintiff's state of mind, and certainly would be largely unfamiliar with her day-to-day ability to care for herself, to manage her affairs, etc. Fortt's reports, created largely for the purpose of evaluating plaintiff's emotional and mental status, do not speak in detail to plaintiff's ability to enter into contracts, manage her affairs, care for her daily needs, etc. As to Holtzclaw, her deposition testimony reveals only limited knowledge of plaintiff's state of mind, such as information plaintiff relayed to Holtzclaw about plaintiff's difficulty in staying organized and her feelings of being overwhelmed, which was gained in the course of Holtzclaw's ongoing role as plaintiff's tax preparer; it does not suggest a deeper understanding of the information defendants seek. Pl. Ren. Mot., Ex. 5, Deposition of Holtzclaw, T. at 20–27. Holtzclaw's affidavit confirms her lack of recollection or opinion as to plaintiff's ability to manage her daily activities, contract with third parties, etc. As to plaintiff's assertion that Hughes Redcross "had knowledge of plaintiff's state of mind and health status," a review of the Carroll Manor Nursing medical records that plaintiff provides in support of this statement reveals a limited reference to Redcross regarding an inquiry he made of the Nursing staff about plaintiff's decision-making abilities. This evidence alone does not suggest a deep understanding of the nature of the information defendants seek. Pl. Ren. Mot., Ex. 4. Finally, Ball's affidavit attests to a one-time contact with plaintiff; it is highly unlikely that this single contact can form the basis for a substantive understanding of plaintiff's ability to care for her affairs, or her state of mind before and after the intervention proceedings.

These affidavits establish the opposite of what plaintiff asserts; in contrast to the individuals discussed above, attorney Brown, as plaintiff's limited guardian, is arguably the most closely involved person in plaintiff's life, at least in the period commencing in July

---

6. Plaintiff presumably offers this statement to discredit Ball's statements as biased, and to challenged Ball's assertions that she had only limited contact with plaintiff.

1999, and arguably in the months preceding July, when Brown first met plaintiff. Significantly, Brown served as plaintiff's limited guardian at a time when plaintiff's contract for care with defendants was terminated. Therefore, it is fair to say that Brown, as plaintiff's limited guardian, had a unique role in plaintiff's life beginning in May 1999, and perhaps more intimate knowledge or involvement in the intervention proceedings and the termination of the contract for care than anyone else in plaintiff's life. While Brown can certainly have no firsthand knowledge of the events leading up to plaintiff's entry into contract with defendants in January 1998, since she first met Jennings in May 1999, defendant must be permitted to explore Brown's knowledge of plaintiff's state of mind after May 1999. Brown's crucial role in plaintiff's life since May 1999 and her knowledge as plaintiff's limited guardian of plaintiff's ability to care for herself and manage her affairs is critical to the main issues in this case and justify the deposition of Brown. *Evans* at *3.

While plaintiff urges that her psychologist, Chauncey Fortt, Ph.D., and her physicians have information that defendants seek, as I discussed above, I am hard-pressed to see how these individuals, in their very specific roles as plaintiff's clinical and medical providers, have information as to plaintiff's state of mind before and after the intervention proceedings, her ability to care for herself, her daily affairs, her ability to enter into contracts, etc.

Based on the affidavits provided by the defendants, and Brown's unique role as plaintiff's limited guardian, I find that Brown is the best and perhaps only source for information regarding plaintiff's state of mind from May 1999 forward, and plaintiff's ability to manage aspects of her daily life, including her personal needs, her financial affairs, her ability to enter into contracts with third parties, etc. Accordingly, I will permit the deposition of Brown to be taken. I will, howev-

er, limit the defendant's inquiry of Brown to the time period beginning with Brown's first meeting with Jennings, in May 1999, to the present. Finally, as discussed in my prior order, plaintiff may raise any privilege objections she may have on a question-by-question basis at Brown's deposition. *Order* of May 16, 2001 at 6.

This court appreciates that this order position places Ms. Brown in a difficult position. As plaintiff's present attorney, Brown faces potential disruption of her preparation of the case and even disqualification as plaintiff's attorney if she is ultimately called as a witness. However, I have found that defendants have met their burden as to the compelling need for Brown's testimony. Defendants are not seeking information regarding Brown's role as plaintiff's attorney. Rather, they are seeking knowledge Brown may have in her role as plaintiff's limited guardian, a position that predates her role as plaintiff's attorney. Furthermore, by assuming dual roles, first as plaintiff's limited guardian and then subsequently as her attorney, Brown undertook the risk that she might be called as a key witness in this matter.[7]

## CONCLUSION

In accordance with this Memorandum Opinion and Order, it is hereby

**ORDERED** that plaintiff's *Motion for a Protective Order* [# 56] and *Renewed Motion for a Protective Order* [# 93] are **denied**. The parties shall contact chambers immediately to schedule a mutually convenient date and time to conduct the deposition of Gladys Jennings. It is further hereby

**ORDERED** that Defendants' original *Motion to Compel* [# 59] is **granted**, except as to that portion which sought to compel the production of defendants' Requests for Documents Number 1–4, which is **denied as moot**, upon the parties resolution of the matter subsequent to defendant's filing its original Motion to Compel.[8] It is further hereby

---

7. *Cf. Cascone v. Niles Home for Children*, 897 F.Supp. 1263, 1267 (W.D.Mo.1995) (permitting plaintiff to depose a defense attorney in part because information sought from the attorney concerned attorney's own conduct in the case,

which predated the commencement of the litigation and therefore put the attorney on advance notice that she might be deposed.)

8. The defendants initially sought to compel the production of all their Requests for Documents.

**ORDERED** that Defendants' second *Motion to Compel* [# 100] is **granted**. It is further hereby

**ORDERED** that the matter of defendants' request for sanctions under Fed.R.Civ.P. 37 in connection with its original and second Motions to Compel is stayed pending the completion of the depositions of Gladys Jennings and Hope C. Brown. Upon the taking of their depositions, this court will entertain any argument defendants may make that the information learned in these depositions further supports their request for sanctions against plaintiff. The court will set a briefing schedule for the sanctions issue once these depositions are complete.

**SO ORDERED.**

However, subsequent to defendants' filing their original Motion to Compel, plaintiff provided defendants with supplemental, responsive documents as to Document Requests Numbers 5–13. *See* Order of May 16, 2001 at 18 n. 2. Accordingly, defendants only sought to compel Document Requests Numbers 1–4. In my May 16th Order, I directed plaintiff to file a supplemental statement as to Document Requests Numbers 1–4 which indicated, if applicable, that there were no other documents responsive to defendants' request apart from those documents that defendants already had in their possession. *Id.* at 19. I also indicated that once plaintiff filed such a statement, this Court would assess whether Document Requests Numbers 1–4 were in fact still in dispute.

Plaintiff's responsive filing of May 21, 2001, stipulated that there were no other documents responsive to defendants' request as to Document Requests Numbers 1–4 other than those documents that defendants already had in their possession. Plaintiff's Supplemental Responses to Defendant Cheryl Alston's First Request for Production of Documents, at 3–4. Accordingly, based on this statement, defendants' Documents Requests Numbers 1–4 are no longer in dispute.