Mayla V. CAMPOS, et al., Plaintiffs,

v.

WEBB COUNTY TEXAS, Defendants.

Civil Action No. 5:12–CV–7.

United States District Court,
S.D. Texas,
Laredo Division.

Dec. 11, 2012.

Douglas A. Allison, Law Offices of Douglas A. Allison, Corpus Christi, TX, for Plaintiffs.

### MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is "Plaintiffs' Memorandum in Support of Motion for Protective Order," filed November 21, 2012.

(*See* Dkt. No. 20). Therein, Plaintiff Mayla Campos, individually and on behalf of her incapacitated son, Plaintiff David Christopher Campos (David Campos), requests that the Court either "quash or stay the deposition of David Christopher Campos, until such time as it is advisable by a treating mental health professional...." (*Id.* at 3). Plaintiffs alternatively suggest that "appropriate limitations or protocols" might be agreed upon by the parties and presented to the Court. (*Id.* ¶ 9).

Plaintiffs' underlying suit is based upon the "rapes, assaults, and torture committed upon" David Campos, "while in the care and custody of Webb County" at the Webb County Jail. (*Id.* ¶ 1). David Campos "has suffered from a number of mental disorders including bipolar disorder and psychosis," and Plaintiffs contend that his condition has been exacerbated "as a result of the incidents made the basis of this suit." (*Id.* ¶¶ 1–2). Because David Campos "remains particularly mentally fragile," and any discussions regarding the details of the rapes and assaults have been "accomplished by qualified mental health professionals only," (*Id.* ¶ 2), Plaintiffs seek to "stay the deposition until it can be determined by a treating mental health professional that David is capable of being deposed." (*Id.* ¶ 9).

Plaintiffs support their request with the affidavit of David Campos's treating psychiatrist, Dr. Jose G. Garcia, MD, MPH (Dr. Garcia). (*See* Dkt. No. 25, Ex. 1). Dr. Garcia has treated David Campos since August of 2011, "for his emotional condition and symptoms which resulted from his repeated recent sodomization." (Dkt. No. 25, Ex. 1, ¶ 3). Dr. Garcia notes, among other things, that David Campos suffers from major depression, post-traumatic stress disorder due to sexual rape, and mild mental retardation. (*Id.*) Despite the progress David Campos has made in treatment, Dr. Garcia remains "vehemently opposed [to] his participation" in a deposition, as David Campos "will very likely to [sic] decompensate into a full blown psychotic regression under probable aggressive questioning," which would thereby "cause the immediate loss ... of the very slow progress he has gained from treatment." (*Id.* ¶ 5).

Dr. Garcia also points to David Campos's "less than normal intellectual capability" and the "worsening of his disability due to" the victimization he suffered in jail, concluding that David Campos would be highly suggestible and unable answer questions intelligently. (*Id.* ¶ 6). Dr. Garcia thus concludes that "it is [his] professional opinion that [he] strongly urge[s] a strong recommendation against the deposition of David Christopher Campos." (*Id.* ¶ 7).

Defendants respond by emphasizing their "legitimate and important interests" in deposing Plaintiff, (*see* Dkt. No. 23, at 3), and argue that "Plaintiffs have not met their burden of establishing the existence of extraordinary circumstances that would justify an order quashing the deposition of such an important witness and party." (*Id.* at 4). The Court held a brief hearing on the pending motion on December 3, 2012, where both parties reiterated their positions.

## I. DISCUSSION

▇▇▇ Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the discretion to issue protective orders that limit the extent and manner of discovery, in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expensive." Fed.R.Civ.P. 26(c)(1). However, the Court may only issue such an order "for good cause." *Id.* The party seeking a protective order bears the burden of establishing good cause and a specific need for protection. *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D.Tex.1994) (citing *Landry v. Air Line Pilots Ass'n Intern. AFL–CIO*, 901 F.2d 404, 435 (5th Cir.1990)). Because good cause, within the meaning of the rule, contemplates a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements," *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)), a party seeking to prevent or delay a deposition on medical grounds must make a "specific and documented factual

showing that the deposition will be dangerous to the deponent's health." *Schorr v. Briarwood Estates Ltd. P'ship*, 178 F.R.D. 488, 491 (N.D.Ohio 1998) (citing *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)). Stated in other words, the moving party carries the substantial burden of showing "extraordinary circumstances based on specific facts that would justify such an order." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C.2001) (citations omitted) (internal quotation marks omitted). As such, conclusory or speculative statements by a treating physician about the harm which will be suffered without a protective order are simply insufficient. *Bucher*, 160 F.R.D. at 92; *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D.Iowa 1993); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C.1988).

▇▇▇ In the present case, as noted above, Dr. Garcia concludes that David Campos's participation in a deposition "will be medically detrimental," and that he would "very likely to [sic] decompensate into a full blown psychotic regression under probable aggressive questioning." (Dkt. No. 25, Ex. 1, ¶ 5). The result of this regression would be "the immediate loss ... of the very slow progress he has gained from treatment." (*Id.*). Dr. Garcia's affidavit contains several other such statements referring to the harm that a deposition would likely cause David Campos.[1] (*See id.* ¶¶ 5–6). However, other courts addressing similar contentions put forth by treating physicians have found the statements to be inadequate because of their conclusory or speculative nature. *Compare Jennings*, 201 F.R.D. at 274–76 (denying plaintiff's motion for a protective order because the psychologist's report, which asserted, among other things, that plaintiff "faces a danger of exacerbating her symptoms of dementia and depression," was conclusory in nature and did "not state with specificity how or why this [would] happen"), *and Motsinger*, 119 F.R.D. at 378 (finding that an extended stay of the deposition would require "detailed information supporting the opinion" that plaintiff's "congestive heart condition

---

**1.** Dr. Garcia further points to David Campos's "less than normal intellectual capability" in concluding that "David will always be at an unfair disadvantage [in a deposition] because he would easily give inappropriate or inaccurate responses under the pressure of interrogation." (*Id.* ¶ 6).

... makes his deposition impossible," and possibly require submission of the physician "for examination by the court or by defendant on behalf of the court"), *and Medlin,* 113 F.R.D. at 652–53 (stating that "the Court may not abdicate its responsibility by unquestionably accepting a doctor's summary opinions," thereby finding the "brief and conclusory [psychiatrist's] certificate" regarding plaintiff's "progressive deterioration" was "not sufficient," and allowing the plaintiff to renew her motion for a protective order with "specific evidence ... supporting that position"), *with Schorr,* 178 F.R.D. at 492 (determining that plaintiff substantiated her claim because psychological expert provided specific examples of behavior and described intense psychological distress plaintiff experienced when discussing traumatic events). Dr. Garcia's concern is apparent, and the Court cannot doubt the sincerity of his medical opinion; that being said, given the high standard required for protective orders, it appears that Dr. Garcia's conclusory statements fall short of that standard.

██ Due to the high burden parties must meet in substantiating alleged "extraordinary circumstances," courts will rarely grant a protective order that completely prohibits a deposition. *See Salter v. Upjohn Co.,* 593 F.2d 649, 650 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 125 (D.Md.2009) (noting that a "motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts"); *Jennings,* 201 F.R.D. at 275 (stating that "courts regard the complete prohibition of a deposition as

an extraordinary measure which should be resorted to only in rare occasions") (internal quotation marks omitted); *Deines v. Vermeer Mfg. Co.,* 133 F.R.D. 46, 48 (D.Kan. 1990) (citing 4 J. Moore at al., *Moore's Federal Practice* ¶ 26.69 (2d ed. 1989)) ("In view of the general philosophy of full discovery of relevant facts ... it is rare that a court will order that a deposition not be taken at all."); *Motsinger,* 119 F.R.D. at 378 ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

In the cases the Court has found in which a protective order completely proscribing a deposition is issued, there appears to be a clear distinction from the present case. Those cases prohibit the deposition of a witness, rather than that of a party.[2] *See Dunford v. Rolly Marine Serv. Co.,* 233 F.R.D. 635, 636–37 (S.D.Fla.2005) (determining that the "potentially life-threatening and severely disabling brain disorder" of a witness was "[o]ne of those rare circumstances that may preclude the taking of a deposition altogether," but also noting that the court's decision might have been different if "the issue in the case revolved around [the witness's] medical condition"); *Frideres,* 150 F.R.D. at 155–57 (finding that a physician's affidavit discussing the witness's fragile condition because of her granulomatous enterocolitis, identifying "several bleeding episodes" and a "life-threatening hemorrhage," was sufficient for a protective order, but nonetheless allowing the parties to depose the physicians for later reconsideration of the order); *In re McCorhill Pub., Inc.,* 91 B.R. 223, 224–25 (Bankr. S.D.N.Y.1988) (addressing a life-threatening

---

**2.** Plaintiffs point to *Fonner v. Fairfax County, Virginia,* 415 F.3d 325, 331 (4th Cir.2005), in support of their position. (Dkt. No. 20, ¶ 7). In *Fonner,* the appellate court upheld the district court's issuance of a protective order, which prevented the deposition of a "mentally retarded" and "emotionally fragile" man who was likely to become "traumatized" by "the negative effects of the deposition." 415 F.3d at 327, 331. *Fonner* is distinguishable from the instant case in that the plaintiff was seeking to depose a nonparty witness. Furthermore, in those cases where the witness was unable to be deposed, the court correspondingly held that no party would

be able to use that witness's testimony for trial. *See Downing v. Life Time Fitness, Inc.,* No. 10–11037, 2011 WL 2015514, at *1 (E.D.Mich. May 24, 2011) (conditioning the use of the witness's testimony on her ability to be deposed); *S.E.C. v. Children's Internet, Inc.,* No. C–06–6003 CW (EMC), 2008 WL 346419, at *4 (N.D.Cal. Feb. 7, 2008) (stating that the witness would be precluded from testifying at trial if he did not participate in a deposition); *Dunford,* 233 F.R.D. at 637 (not compelling the witness to attend a deposition, and thus excluding her from testifying in the trial).

deposition of an eighty-year-old witness in a vegetative state, who might be "catapulted into heart failure" by the deposition, and concluding that "if an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order.").

Conversely, where a party is seeking to prohibit his or her own deposition, courts have refused to issue a blanket prohibition of the deposition, and instead have imposed safeguards and conditions on said deposition. *See Tolbert–Smith v. Bodman,* 253 F.R.D. 2, 3–4 (D.D.C.2008) (because being "deposed in the presence of her supervisors" would cause plaintiff "a very severe reaction ... including increasing her level of suicide ideation," the court found it appropriate to bar the supervisors from attending her deposition); *Jennings,* 201 F.R.D. at 276 (allowing the deposition to go forward in the magistrate judge's courtroom, where any health concerns could be addressed immediately); *Schorr,* 178 F.R.D. at 492 (despite finding that plaintiff had met her burden and "made a specific and documented factual showing that the deposition is likely to be dangerous to her health," continuing with the deposition but enumerating a number of conditions on plaintiff's deposition); *Bucher,* 160 F.R.D. at 94 (ordering certain safeguards be placed on the deposition, including the requirement that the deposition be held at the plaintiff's treatment facility); *Medlin,* 113 F.R.D. at 653 (granting plaintiff a temporary protective order only).

It would appear that the higher burden imposed on a party who is seeking a protective order, as opposed to a witness seeking one, stems from the non-movant's legitimate interest in trial preparation and the discernable importance of the witness whose deposition is at issue. *See, e.g., Jennings,* 201 F.R.D. at 276 (maintaining that the plaintiff's testimony "is critical to the lawsuit, and defendants must be permitted to take it in order to develop their defense of this case"). Significantly, the showing required under Rule 26(c) must be sufficient to overcome the opposing party's important interests in conducting discovery. *Alexander v. F.B.I.,* 186 F.R.D. 71, 75 (D.D.C.1998). A predecessor

decision in the Fifth Circuit similar to the instant case, *Bucher v. Richardson Hospital Authority,* emphasized the weight that must be afforded the defendants' interest in conducting discovery and preparing the case for trial. 160 F.R.D. at 92 ("These are important considerations and great care must be taken to avoid their unnecessary infringement."). Despite the testimony given by the plaintiff's psychologist that "subjecting [the plaintiff] to a confrontational discussion of her [sexual] abuse ... would traumatize her to the point of further harm and deterioration and endanger her psychological stability," the *Bucher* Court nonetheless found that the plaintiff's evidence did "not rise to the level of 'extraordinary circumstances' necessary to prohibit the defendants from conducting this discovery." *Id.* at 91–92. The court concluded by stating that "the defendants' right to depose [the plaintiff] outweighs the plaintiff's concern" of future harm. *Id.* at 92.

## II. CONCLUSION

Given the high burden that Plaintiffs must meet in order to quash a deposition, the Court is unable to say that it has been met. Due to the importance of Plaintiff's testimony and Defendants' corresponding substantial interest in deposing Plaintiff, it seems unlikely that the Court can simply issue an indefinite stay of his deposition, especially bearing in mind the upcoming deadlines in the case. However, the Court does not take lightly David Campos's "emotionally brittle" condition regarding the alleged traumatic events. Thus, as indicated in the undersigned's December 4, 2012 Order (Dkt. No. 26), Plaintiff's motion (Dkt. No. 20) is GRANTED IN PART and DENIED IN PART. The Court ORDERS that the deposition of David Campos be temporarily stayed *until January 4, 2013.*

Plaintiffs should understand that the Court will "only grant as narrow a protective order as is necessary under the facts." *Frideres,* 150 F.R.D. at 156. If Plaintiffs are seeking a more meaningful stay of the deposition, more specificity and detailed evidence is warranted in their next motion.[3] Further, while Plain-

---

**3.** For example, during the hearing, Plaintiffs' counsel referenced discussions David Campos

tiffs' motion and Dr. Garcia's accompanying affidavit do contain a certain level of detail regarding Plaintiff's history and treatment, the Court is unable to ascertain what limitations Plaintiffs are alternatively seeking for the deposition.[4] As such, Plaintiffs should also include the particular safeguards that would allow the deposition to proceed in the most medically appropriate manner.

IT IS SO ORDERED.

had with law enforcement regarding the underlying incidents. (Dec. 9th Motion Hr'g at 1:19 p.m.). It would be helpful for the Court to know if his "mental condition deteriorated" or if he "was emotionally traumatized as a result of these discussions," and what the exact effects of said discussions were. *Bucher*, 160 F.R.D. at 92.

4. Plaintiffs point to David Campos's distress in the presence of men, and the likely results of "probable aggressive questioning," (Dkt. No. 25, Ex. 1, ¶¶ 4–5), but the Court has no information on whether Plaintiffs are specifically requesting that David Campos's deposition is conducted by a woman, or whether Plaintiffs are asking that it be conducted in the presence of his treating psychiatrist and mother to tame any aggressive questioning.