RICHARDS OF ROCKFORD,
INC., Plaintiff,

v.

PACIFIC GAS & ELECTRIC
COMPANY, Defendant,

Darling-Delaware Company, Inc., Additional Defendant on Counterclaim.

No. C–74–0578–CBR.

United States District Court,
N. D. California.

May 21, 1976.

Steinhart, Goldberg, Feigenbaum & Ladar, Marvin D. Morgenstein, Eliot S. Jubelirer, San Francisco, Cal., La Rocco & Johnson, Joseph J. La Rocco, Norman E. Johnson, Chicago, Ill., for plaintiff and counter-defendant.

Charles T. Van Deusen, Arthur L. Hillman, Ivor E. Samson, San Francisco, Cal., for Pacific Gas & Elec. Co.

Bronson, Bronson & McKinnon, San Francisco, Cal., for Darling-Delaware.

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Daniel Steiner, General Counsel of Harvard University, for the nonparty witnesses.

MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff Richards of Rockford, Inc. ("Richards") brought this diversity action against defendant Pacific Gas and Electric Company ("PG&E"). In the course of discovery, plaintiff moved to compel a third party to testify and to produce documents concerning certain confidential interviews with employees of PG&E. The issues having been briefed and argued, the Court denied the motion from the bench. While this case was subsequently settled on the

eve of trial, the Court felt a written discussion of the reasons for its order would be appropriate because of the importance and novelty of the question presented.

## I

Richards brought an action for breach of contract, seeking final payment under an agreement for the design, manufacture and delivery of 135 spray cooling modules for use in PG&E's Pittsburg, California power plant. PG&E withheld final payment, because the spray cooling modules allegedly did not perform as guaranteed. Richards maintains that the modules met contract specifications, but that the actual weather conditions to which the modules were subjected varied significantly from the design weather conditions specified by PG&E in making the contract. Richards further contends that the modules were severely damaged because of PG&E's alleged negligence in designing and installing the entire cooling system of which the modules were a part. In addition to its contract action, Richards alleges that PG&E published defamatory statements with the intent to injure Richards' business and reputation, for which Richards seeks compensatory and punitive damages.

In conducting its discovery, plaintiff deposed Professor Marc J. Roberts of the Harvard School of Public Health and the Kennedy School of Public Administration. Under a pledge of confidentiality, Professor Roberts had interviewed employees of PG&E as part of a research project investigating the manner in which utilities make environmental decisions. PG&E was one of six utilities studied. The focus of Professor Roberts' research was the relationship between organizational structure and decision-making. The decision to install the spray cooling canal at the Pittsburg, California power plant was one subject of inquiry. On the advice of counsel, Professor Roberts declined to disclose either the identity of the PG&E employees interviewed or the substance of what they said.

■ Plaintiff thereafter moved for an order to compel production of documents[1] and to require testimony about the identity of the PG&E employees interviewed. Plaintiff directed its motion to Lane McIntosh, Professor Roberts' research assistant. This fact does not alter the Court's reasoning process, nor does it raise any special problems of privilege, since the Court's aim is not to create a privilege, but rather to achieve a balance between certain competing interests.[2] Regardless of whether the motion names Professor Roberts or his assistant, the issue remains the same: whether on these facts, plaintiff's interest in satisfying its discovery request outweighs the public interest in maintaining confidential relationships between academic researchers and their sources.

## II

■ The law begins with the presumption that the public is entitled to every person's evidence. *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932). Rule 27(b)(1) of the Federal Rules of Civil Procedure authorizes discovery of any relevant matter not privileged. Nevertheless, the trial judge is invested with broad discretion in supervising the course and scope of discovery. F.R. Civ.P. 26 and 27. The exercise of this discretion often requires that the court balance the interests of the private litigant in obtaining the information sought against the costs of providing it. *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y.1975).

The interests at stake here are not easily compared. The private litigant and the public have a strong interest in the fair and

1. The documents sought were Professor Roberts' and Lane McIntosh's notes of the interviews.

2. The result reached here is not based upon any privilege; rather it is founded upon the court's supervisory powers over discovery. The Court notes, however, that unless the claimed privilege rises to a constitutional level, the court must look to California law (Federal Rules of Evidence, rule 501) which does not provide for such a privilege.

efficient resolution of civil disputes in courts of law. On the other hand, society has a profound interest in the research of its scholars, work which has the unique potential to facilitate change through knowledge. Counsel for Lane McIntosh have produced an impressive series of affidavits from scholars throughout the country attesting to the necessity of maintaining confidential relationships if their research is to be accomplished. Much of the raw data on which research is based simply is not made available except upon a pledge of confidentiality. Compelled disclosure of confidential information would without question severely stifle research into questions of public policy, the very subjects in which the public interest is greatest.

■ The cases most closely analogous to the present facts are those involving the qualified First Amendment privilege of newsmen not to testify. Whether the public interest in protecting confidential relationships between academic researchers and their sources rises to the stature of a constitutional privilege need not be resolved by the instant case. Nevertheless, the cases involving newsmen provide useful guidelines for striking a balance between discovery and non-disclosure: the nature of the proceeding, whether the deponent is a party, whether the information sought is available from other sources, and whether the information sought goes to the heart of the claim. *See generally Baker v. F & F Investment,* 470 F.2d 778 (2 Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973).

■ This is a civil proceeding. Neither Professor Roberts nor Lane McIntosh are parties to the underlying action. The research project for which the interviews were conducted was not initiated with an eye to this litigation. The central subject of this action, the events surrounding the decision to discontinue using the spray cool-

ing system at the Pittsburg power plant, was not a focus of the study.[3] The factual issues which divide the parties may certainly be resolved without resort to statements made by PG&E employees to Professor Roberts. The terms of the written agreement, the relevant weather conditions, and the technical performance of the modules, are readily and independently adducible. Any information Professor Roberts or Lane McIntosh may have as to the identity of those PG&E officials who decided to abandon the system and the reasons for their decision is available to plaintiffs through interrogatories propounded to PG&E. In short, the information sought is largely supplementary.

All of the above considerations weight the balance toward non-disclosure. A more difficult problem is raised by plaintiff's defamation allegations. Counsel for Richards suggests that Richards may have been defamed during the interviews, and that such information goes to the heart of plaintiff's claim and is not available through alternative means. Indeed, there is authority that one who publishes defamatory statements has no First Amendment privilege to refuse to reveal the identity of the source for such statements. *Garland v. Torre,* 259 F.2d 545 (2 Cir. 1958), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). In *Garland,* however, the deponent was a party; more importantly, only the identity of the source for the alleged defamation was at issue. It was beyond dispute that allegedly defamatory statements had been published. Here, by contrast, there is absolutely no evidence that Richards was defamed during the interviews with Professor Roberts. No such allegations appear in plaintiff's complaint, nor, as far as the Court can determine, in any of plaintiff's answers to interrogatories. Given the importance of maintaining confidential channels of communication between academic researchers and their sources, the Court will not compel disclo-

---

3. Professor Roberts has thus far published one article as a result of the research of which these interviews were a part. It contains no mention of the power plant at Pittsburg, California, nor of the spray cooling modules manu-

factured by Richards, nor are any of the persons interviewed identified. "An Evolutionary and Institutional View of the Behavior of Public and Private Companies," LXV *The American Economic Review* 415 (May 1975).

sure absent at least a prima facie showing that Richards was in fact defamed in the course of the interviews conducted by Professor Roberts.

### III

The liberal discovery provisions of the Federal Rules of Civil Procedure are an integral part of the overall scheme of litigation in the federal courts. Their scope is unquestionably broad. It is for that very reason that the application of the rules of discovery is subject to the supervisory discretion of the trial judge, whose duty it is to ensure that the quest for discovery does not subsume other important interests. On these facts, the Court finds that the costs of compelling the discovery sought here far outweigh the movant's asserted interest in the information sought. Accordingly, the motion to compel a third party to testify and to produce documents was denied.