Richard A. FARNSWORTH, et
al., Plaintiffs,

v.

The PROCTER & GAMBLE COMPANY,
et al., Defendants/Appellants,

v.

CENTER FOR DISEASE CONTROL,
Movant/Appellee.

No. 84–8330.

United States Court of Appeals,
Eleventh Circuit.

April 29, 1985.

**1546**

Lawrence R. Elleman, Cincinnati, Ohio, Dan B. Wingate, Atlanta, Ga., for defendants, appellants.

Nina L. Hunt, Asst. U.S. Atty., Atlanta, Ga., for movant, appellee.

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

Procter and Gamble (P & G) appeals from a discovery protective order granted by the district court under Fed.R.Civ.P. 26(c) denying it access to the names and addresses of women who gave the Center for Disease Control (Center) personal information as participants in the Center's Toxic Shock Syndrome (TSS) studies. The sole issue on appeal is whether the order was within the district court's discretion. 101 F.R.D. 355. We affirm.

Plaintiffs filed product liability actions in United States District Courts in Massachusetts, Missouri, Washington, New Mexico, Wisconsin, Indiana and Tennessee, seeking to recover damages from Procter and Gamble for Toxic Shock Syndrome allegedly caused by "Rely" tampons manufactured by P & G. Because plaintiffs intended to introduce into evidence a certain Center study purportedly linking "Rely" tampons with TSS, P & G served the Center with a subpoena seeking to discover the names and addresses of women who participated in the study. P & G hoped to discredit the Center study by pointing out certain purported "biases" in the methodology, and asserts that it needs to personally contact each woman involved in the study to adequately detail those faults. The Center, a non-party resident in Georgia, then moved for the protective order granted by the District Court in the Northern District of Georgia.

It is undisputed that the information sought by P & G is of a highly personal nature. The questions answered for the study concerned medical histories, sexual practices, contraceptive methods, pregnancy histories, menstrual activity, tampon usage, and douching habits. Participants provided this information on a voluntary basis. While no guarantee of anonymity was given, the Center fears that disclosure of such potentially embarrassing information would inhibit future studies by causing the public to fear disclosure of personal information given to the Center.

Responding to earlier P & G discovery requests, the Center turned over approximately 34,000 TSS-related research documents. The Center apparently provided P & G with every piece of information regarding its TSS studies, with the exception of the names and addresses of the participants. The Center has indicated to P & G its willingness to update the information provided to P & G with the exception of the personal information.

Approximately 300 women were involved in the study. To provide P & G with some of the information it seeks while maintaining the privacy of the study participants, the Center contacted those women and asked if they would consent to have their names and addresses released to P & G. The Center agreed to release the identities of any woman consenting to disclosure. As of October 31, 1983, 32 women had agreed to disclosure, 119 had not agreed, and 26 letters were returned as undeliverable. P & G had independently obtained the consent of 20 women to the disclosure and received their records.

The law's basic presumption is that the public is entitled to every person's evidence. *See, e.g., Blackmer v. United States,* 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932); *Richards of Rockford v. Pacific Gas & Electric,* 71 F.R.D. 388,

389 (N.D.Cal.1976). The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. *See* Fed.R. Civ.P. 26(b)(1). The trial court, however, is given wide discretion in setting the limits of discovery, *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir.1979), and its judgment will be overturned only when a clearly erroneous principle of law is applied or no evidence rationally supports the decision. *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975). The abuse of discretion standard of review applies. *Perel v. Vanderford*, 547 F.2d 278 (5th Cir.1977).

█ The district court based its ruling on Fed.R.Civ.P. 26(c) which provides that a court "for good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of "good cause," the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule. *See Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277–78 (7th Cir.1982); *Richards of Rockford, Inc. v. Pacific Gas & Electric Co.*, 71 F.R.D. 388, 389 (N.D.Cal.1976); *Wright v. Jeep Corp.*, 547 F.Supp. 871, 872–75 (E.D.Mich. 1982); *Andrews v. Eli Lilly & Co.*, 97 F.R.D. 494, 497 (N.D.Ill.1983). Under that standard, the district court's duty was to balance P & G's interest in obtaining the names and addresses of the study participants against the Center's interest in keeping that information confidential.

█ P & G's interests relate to its trial preparation and defense. Those are important interests, and great care must be taken to avoid their unnecessary infringement. *Cf. United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Freeman v. Seligson*, 405 F.2d 1326, 1348 (D.C.Cir.1968) (Leventhal, J., concurring). The place of social science research studies in the legal system has not yet been fully defined. On occasion courts have taken notice of social studies at the appellate level without any testing of those studies in an evidentiary hearing. *See, e.g., Muller v. Oregon*, 208 U.S. 412, 419 n. 1, 28 S.Ct. 324, 325 n. 1, 52 L.Ed. 551 (1908) (the so-called Brandeis brief case). In other cases, the social science research has been adversarially tested at the trial level. *See, e.g., McCleskey v. Kemp*, 753 F.2d 877, 886–890 (11th Cir.1985). The Center's study is intended for use at trial. The statistical type of research is based on hearsay information. An important element in determining the validity of such studies might sometimes require an opportunity to test the information used in the studies. The admissibility of the studies into evidence may depend upon the revelation of source information.

We are not here ruling on admissibility, however. It will be the responsibility of the courts in which the suits will be tried to determine if the information available establishes sufficient validity of the research so that it can be examined without P & G personally contacting the research subject.

█ The record and argument before this Court show that the district court acted within its discretion in holding that the Center's interests in keeping its study participants' names confidential outweigh the discovery interests of P & G.

First, the Center's purpose is the protection of the public's health. Central to this purpose is the ability to conduct probing scientific and social research supported by a population willing to submit to in-depth questioning. Undisputed testimony in the record indicates that disclosure of the names and addresses of these research participants could seriously damage this voluntary reporting. Even without an express guarantee of confidentiality there is still an expectation, not unjustified, that when highly personal and potentially embarrassing information is given for the sake of medical research, it will remain private.

Second, P & G was provided with an enormous quantity of information regarding the Center's research into Toxic Shock Syndrome. Every single document re-

quested was delivered. The sole deletion concerned names and addresses. The Center offered, in the event the district court determined further discovery was necessary, to forward written questionnaires from P & G to these women, but P & G declined the offer. P & G also has the identity of at least fifty women involved in the study. They have apparently cooperated with P & G and biases of the study participants may well be discovered from questioning these women.

■ Rule 26(c) gives the district court discretionary power to fashion a protective order. The decision does not depend upon a legal privilege. In a careful opinion, the district court took into consideration all relevant matters and arguments. No error has been shown.

AFFIRMED.