**Eva S. WHEELES, Plaintiff,**

v.

**HUMAN RESOURCE SYSTEMS, INC., et al., Defendants.**

**CIV.A. No. 97–695–BH–S.**

United States District Court, S.D. Alabama, Southern Division.

June 12, 1998.

Robert J. Hedge, J. Donald Banks, Drinkard, Banks & Hicks, N. Bruce Moseley, Mobile, AL, for plaintiff.

Patrick H. Sims, Mobile, AL, Anne M. Hamilton, Michael L. Stevens, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Human Resource Systems, Inc.

William R. Sawyer, U.S. Attys. Office, Mobile, AL, for Rodney Slater.

Patrick H. Sims, Mobile, AL, Anne M. Hamilton, Michael L. Stevens, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Darlene Stein.

William R. Sawyer, U.S. Attys. Office, Mobile, AL, for Eric Starnes and U.S.

## MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

This action is before the court on the motion of the United States for a protective order (Doc. 48). The motion was initially referred to the Magistrate Judge, but was then referred to the undersigned as an appeal from his determination. For the reasons set forth below, after conducting a *de novo* review of the ruling of the Magistrate Judge, the court will reverse that ruling and will grant the relief sought by the defendants.

## I. BACKGROUND

Plaintiff Eva Wheeles initiated this Title VII action, alleging that she was sexually harassed during her tenure as a nurse practitioner at the Coast Guard's Aviation Training Center in Mobile. In particular, she alleges that she was harassed by Ken Armstrong and Charles Scearce, and that she made the harassment known to Lieutenant Erich Starn. Starn served the Coast Guard as a supervisor at the Aviation Training Center. He is not a party to this action, and is not accused of actual harassment, but he is concededly an important witness in this matter by virtue of his supervisory position. He denies that plaintiff reported the alleged harassment to him.

Jeanette Waldrop was, during the relevant times, a co-employee of the plaintiff under the common supervision of Starn. Her testimony in this case is expected to corroborate Starn's, and is expected by all involved to be very unfavorable to the plaintiff's case. Like Starn, she is not a party to this action.

On March 31, 1998, the deposition of Starn was commenced. It did not proceed for any great length of time. A short time into the deposition, the following exchange took place:

Q. [By Mr. Moseley] Did you ever go to Jeanette Waldrop's home on Vista Bonita Drive in Mobile?

A. [Mr. Starn] Yes, I have been there.

\* \* \* \* \* \*

Q. Have you ever spent the night at Jeanette Waldrop's—

MR. SAWYER: Objection.

Q. Have you ever spent the night at Jeanette Waldrop's home?

MR. SAWYER: Objection. Don't answer that. For the record, I'm instructing the witness not to answer. It's not relevant, and there's no need to get into that.

MR. MOSELEY: It certainly is relevant.

MR. SAWYER: Well, I'm instructing the witness not to answer.

MR. MOSELEY: Well, we'll have to go to the judge.

MR. SAWYER: Well, then go to the judge.

Starn Depo. at 54, 55.

The parties then held a telephone conference with the Magistrate Judge. The Magistrate Judge ruled that the question pro-

pounded by Mr. Moseley was proper, and that the witness must answer. Counsel for the federal defendants immediately announced his intention to seek relief from the District Court and terminated the deposition. The parties have fully briefed the issue before the court, and the issues joined are ripe for adjudication.

## II. LEGAL STANDARDS

Generally speaking, the Federal Rules of Civil Procedure grant a party seeking discovery a very wide path down which he may foray, in search of all information favorable to his case. In the absence of a court order, information is deemed discoverable if it is "relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

However, when a party's discovery efforts are more invasive than necessary, the Rules also provide a remedy:

[O]n matters relating to a deposition, the court ... may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \* \* \* \*

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters....

Fed.R.Civ.P. 26(c).

On a motion invoking that rule, this court is called upon to undertake a careful balancing of all relevant matters. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir.1985). The Court of Appeals for the Seventh Circuit has stated:

A motion under Rule 26(c) to limit discovery requires the district judge to compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied. He must consider the nature of the hardship as well as its magnitude, and thus give more weight to interests that have a distinctively social value than to purely private interests; and he must consider the possibility of reconciling the competing interests through a carefully crafted protective order.

*Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir.1984), *cited in In re Eli Lilly & Co., Prozac Products Liability Litigation*, 142 F.R.D. 454, 456–57 (S.D.Ind.1992).

To state the matter more concretely, this court must balance plaintiff's need to inquire into the sexual conduct between two non-party witnesses against the non-parties' legitimate interests in privacy. If the requested relief is granted, the court must carefully tailor its order so that the plaintiff's access to legitimate areas of discovery under Fed. R.Civ.P. 26 is curtailed no more than is necessary.

## III. DISCUSSION

### A. Plaintiff's Need for the Information Sought

Plaintiff seeks to inquire into the possibility of a sexual relationship between Starn and Waldrop for one reason only: She believes that evidence of such a relationship would prove that Waldrop is a biased witness because she would tailor her testimony to maintain the good favor of Starn.[1]

The court notes initially that this is a rather attenuated claim of bias that the plaintiff is raising. The worst act or omission of which Starn is accused is that plaintiff reported acts of sexual harassment to him and he did not take sufficient actions to stop the harassment. Starn himself is not accused of harassment. Waldrop's worst possible testimony could not, therefore, paint

---

1. Plaintiff identifies a second reason, namely, that the "relationship between Starns [sic] and Waldrup [sic] falls under areas very close to if not sexual harassment per se." Apparently, plaintiff believes that Starn would have been sexually harassing Waldrop by engaging in a sexual relationship with her. However, even if that allegation is true, it is utterly immaterial to "the subject matter involved in the pending action" and clearly is not "reasonably calculated to lead to the discovery of" evidence admissible in this case. Fed.R.Civ.P. 26(b)(1).

Starn in too unfavorable a light, and could not result in his personal liability. On the contrary, Starn has little or nothing to gain personally from Waldrop's most favorable[2] testimony. Therefore, the plaintiff has articulated little or no reason why Waldrop would tailor her testimony to favor Starn or to disfavor the plaintiff.[3] The plaintiff therefore will not be greatly prejudiced by a limitation on the discovery she presently seeks.

Moreover, what little prejudice the plaintiff will suffer may be curable by stipulation. Counsel for the federal defendants avers that Starn and Waldrop are willing to stipulate to certain facts which plaintiff may be able to use in order to question Waldrop's testimony without probing into the intimate sexual matters of these non-parties' private lives. *See, e.g., Burger v. Litton Industries, Inc.,* 1995 WL 476712 at *3 (S.D.N.Y.) (defendant's interest in discovering information from which bias might be inferred was mitigated by availability of other evidence from which equivalent inference might be made). Indeed, plaintiff herself does not purport to seek intimate details of Starn and Waldrop's alleged affair. During the telephone conference with the Magistrate Judge, which was held during Starn's failed deposition, counsel for the plaintiff stated:

> The only thing I want to know is if they had an affair, and they can either deny it or not. That's the only thing I want to know. I don't want to know anything about their sex lives other than that. They're adults, we're adults, and I'm not going to ask anything like that.

Starn Depo. at 70. If this is truly all plaintiff wants to know, then the witnesses are apparently willing to agree to as much.

### B. Witnesses' Interest in Privacy

Against the plaintiff's interest in gathering information to prove her case, discussed *supra,* the court must weigh the non-party witnesses' right to be free from unreasonable inquisition into their private lives.

At the outset, the court must express its categorical rejection of the notion, alluded to by the Government in footnote 6 of its brief, that any penumbrae emanate far enough from the due process clauses of the Constitution to embrace any constitutional right to engage in the alleged acts about which the plaintiff seeks to inquire. Such effusive emanation would be better characterized as unlawful encroachment on the traditional police powers of the several states, see U.S. Const. amend. X, and has already been at least implicitly rejected by the United States Supreme Court. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ("Connecticut does have statutes, the constitutionality of which is beyond doubt, which prohibit adultery and fornication.") (Goldberg, J., concurring); *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); *Washington v. Glucksberg,* —— U.S. ——, ——, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (declaring fundamental only those "rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition."). The court's holding is in no way based on any constitutional right other than, perhaps, that fundamental one "to be let alone—the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Starn and Waldrop's rights "to be let alone" are recognized and given expression in Fed.R.Civ.P. 26(c) and the judicial decisions interpreting that provision.

While judicial "emanation" is to be eschewed, it must be recognized that Starn and Waldrop certainly have legitimate interests in privacy regarding their personal affairs, whether or not the court or the State condones the alleged subject matter of the same. In this litigious age, their interests are heightened given that they are engaged in at least a quasi-military enterprise. Their pri-

---

**2.** By the word "favorable," of course, the court means favorable to Starn and unfavorable to the plaintiff.

**3.** Further attenuating the claim of bias is the apparently undisputed fact that Starn and Waldrop "dated" for a while in 1994, but apparently are not romantically involved at this time. A claim of bias in one's testimony must be supported by circumstances that exist *at the time the testimony is given,* and not by circumstances that have existed in the past.

vacy interests are further bolstered by the fact that neither is a party. Neither Starn nor Waldrop is voluntarily involved in this lawsuit, and as far as the record shows, neither is guilty, as that term is naturally understood, of any malfeasance by which they invited themselves to be involved in this lawsuit.[4]

### C. Balancing of Interests

Having fully considered all of the above matters, the court concludes that the witnesses' interests in maintaining the privacy of their intimate relationships outweighs plaintiff's interest in invading it. Plaintiff essentially seeks to ask Starn and Waldrop whether they have ever engaged in sexual intercourse.[5] She believes that evidence of a sexual relationship with Starn will discredit Waldrop's adverse testimony. As discussed above, the court finds this claim of bias rather weak, and the witnesses' interests in privacy rather strong.

Therefore, the court holds that there is "good cause" to limit the scope of the depositions of Starn and Waldrop in order to protect the deponents from "annoyance, embarrassment, [and] oppression...." Fed. R.Civ.P. 26(c)(4).

Other courts have reached similar conclusions. Particularly similar to the case at bar is that of *Stalnaker v. Kmart Corporation,* 1996 WL 397563 (D.Kan.). In that case, a sex harassment plaintiff sought to depose certain non-parties who were not accused of contributing to the alleged hostile work environment. Defendant Kmart, on behalf of the non-party deponents, sought a protective "order that any voluntary romantic conduct or sexual-related activities of [the witnesses] not be inquired into during deposition or other discovery." *Id.* at *1. After examining the relevance of Fed.R.Evid. 412 to that particular situation, and concluding that it was inapplicable, the court held that "defendant has demonstrated good cause to bar discovery of voluntary romantic and sexual activities of the four non-party witnesses to the extent

they have no relationship to the allegations against Kmart." *Id.* at *4.

The court has previously made reference to the cases of *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545 (11th Cir.1985) and *Burger v. Litton Industries, Inc.,* 1995 WL 476712 (S.D.N.Y.). They are mentioned again as cases which preponderate in favor of this court's decision.

### IV. ORDER

The court now turns to its final task in resolving the present appeal. Based on the foregoing balancing of interests, the court must carefully craft an order which channels plaintiff's access to discovery no more than necessary and reconciles the competing interests to the greatest possible extent. *Marese, supra,* 726 F.2d at 1159.

In this connection, a distinction must be drawn between the "annoyance, embarrassment, [and] oppression" the deponents will suffer merely by virtue of having to answer questions about their sexual lives, and the "annoyance, embarrassment, [and] oppression" they would suffer by virtue of the disclosure of that information to third parties not involved in this lawsuit. The court concludes that the plaintiff has no more right to the information sought than anyone else; accordingly, the deponents should be shielded from the unwarranted intrusion in the first instance. Therefore, Starn and Waldrop will not be required to answer questions regarding their sexual lives as set forth in greater detail below. Counsel for the Government was correct in instructing Starn not to answer the pending question, and did not wrongfully terminate his deposition. Fed. R.Civ.P. 30(d).

**WHEREFORE,** it is **CONSIDERED** and **ORDERED:**

(1) That the order of the Magistrate Judge is **REVERSED;**

(2) That the plaintiff *shall not* inquire into any sexual conduct whatsoever between

---

4. Again, Starn himself is not accused of harassment. The worst act or omission of which he is accused is his alleged failure to stop harassment being perpetrated by others.

5. The pending question in Starn's deposition is, "Have you ever spent the night at Jeanette Waldrop's home?" Starn Depo. at 55.

Erich Starn and Jeanette Waldrop, and that those persons may refuse to answer any such question;

(3) That, subject to the limitations of paragraph (2), the plaintiff *may* inquire into whether Starn and Waldrop *presently* have such a relationship that a reasonable person might doubt the veracity of Waldrop's testimony [6]; and

(4) That each party shall bear its own costs in connection with the failed Starn deposition, and the presentation of this appeal.

---

**6.** The court rules this matter discoverable under Fed.R.Civ.P. 26(b)(1), as potentially going to the bias of the witnesses, but expressly reserves ruling on its admissibility under the Federal Rules of Evidence.