Daniel S. ROSENBAUM, Plaintiff

v.

BECKER & POLIAKOFF,
P.A., Defendant.

Becker & Poliakoff, P.A.,
Counter–Plaintiff,

v.

Daniel S. Rosenbaum and Katzman
Garfinkel Rosenbaum, LLP,
Counter–Defendants.

Case No. 08–CV–81004.

United States District Court,
S.D. Florida.

April 28, 2010.

Daniel S. Rosenbaum, Rosenbaum Mollengarden Janssen & Siracusa, PLLC, West Palm Beach, FL, pro se.

Joel L. Shulman, Maurice M. Garcia, Greenspoon Marder Hirschfeld Rafkin Ross & Berger, Fort Lauderdale, FL, for Defendant and Counter–Plaintiff.

Edward Alan Marod, Edward Alan Marod, West Palm Beach, FL, for Counter–Defendants.

***ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER–DEFENDANT DANIEL S. ROSENBAUM'S MOTION TO COMPEL DOCUMENTS IN RESPONSE TO PLAINTIFF/COUNTER–DEFENDANT DANIEL S. ROSENBAUM'S FOURTH REQUEST AND SEVENTH REQUEST FOR PRODUCTION TO DEFENDANT/COUNTER–PLAINTIFF BECKER & POLIAKOFF. P.A.***

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the court on Plaintiff/Counter–Defendant Daniel S. Rosenbaum's Motion to Compel Documents in Response to Plaintiff/Counter–Defendant Daniel S. Rosenbaum's Fourth Request and Seventh Request for Production to Defendant/Counter–Plaintiff Becker & Poliakoff, P.A. (DE 124), which is now ripe for adjudication. After considering the parties' arguments, the court grants in part and denies in part the relief sought through the Motion.

## I. BACKGROUND

Becker & Poliakoff (B & P) filed a five count Counterclaim alleging breach of fiduciary duty against Daniel S. Rosenbaum (Rosenbaum)[1] (Count I); aiding and abet-

---

1. Plaintiff Daniel S. Rosenbaum brought this civil enforcement action for damages in a one

ting against Katzman, Garfinkel & Rosenbaum (KGR) (Count II); tortuous interference with business and/or contractual relations against Rosenbaum and KGR (Count III); breach of contract against Rosenbaum (Count IV); and seeking declaratory judgment on the validity of certain provisions under the Compensation Agreement between Rosenbaum and B & P (Count V).

## II. *STANDARD OF REVIEW*

The Federal Rules of Civil Procedure strongly favor a full and broad scope of discovery whenever possible, allowing a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R.Civ.P. 26(b)(1); *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Stern v. O'Quinn,* 253 F.R.D. 663, 687 (S.D.Fla.2008) (citing *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 206 F.R.D. 518 (S.D.Fla.2002)).[2] The information sought must be relevant, not overly burdensome to the responding party, and tailored to the issues involved in the particular case. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566,

1570 (11th Cir.1992) (citations omitted).[3] "Relevancy" under Rule 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted).[4] In addition, federal courts superimpose "a balancing of interests approach for Rule 26's good cause requirement," whereby the court balances one party's interest in accessing data against the other's keeping of the information confidential. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1313 (11th Cir.2001) (citing *Farnsworth,* 758 F.2d at 1547). Thus, ordinarily, discovery based on relevance should be allowed "unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action." *Tate v. United States Postal Serv.,* No. 04–61509, 2007 WL 521848, at *1 (S.D.Fla. Feb. 14, 2007) (citing *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* No. 01–0392, 2001 WL 34079319 (S.D.Fla. Nov. 1, 2001)).[5]

count Complaint for breach of employment and deferred compensation agreement under the Employee Retirement Income Security Act in connection with specific provisions of the Employment and Deferred Compensation Agreement entered into between Rosenbaum and B & P.

**2.** It is a basic tenet that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507–08, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

**3.** The intent of the Federal Rules was to "make trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." *U.S. v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (citing *Hickman v. Taylor,* 329 U.S. at 501, 67 S.Ct. 385).

**4.** The Advisory Committee Notes to Rule 26 approve the concept that "the ... Rules permit 'fishing for evidence as they should.'" Adv. Com. Notes, 1946 Amend, (citation omitted); *see also Hickman v. Taylor,* 329 U.S. at 507, 67 S.Ct. 385 (indicating "cry of 'fishing expedition'" can no longer serve to prevent inquiry into underlying facts of opponent's case).

**5.** In order to sustain objections to discovery, the party seeking the protection must show the absence of any possible bearing of the information sought to the claims and defenses of the case. *Tate v. United States Postal Serv.,* No. 04–61509–CIV–Jordan/Torres, 2007 WL 521848, at *2 (citations omitted). Such a showing requires either demonstrating that the information is outside Rules 26's broad scope of relevance, or that it "is of such marginal relevance that the potential harm

Indeed, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.... Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund,* 437 U.S. at 351, 98 S.Ct. 2380. In short, information can be relevant and, therefore, discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States,* 502 F.2d 506, 509–10 (5th Cir.1974) (citations omitted).[6]

Furthermore, a district court has broad discretion to prevent or limit the disclosure of confidential trade secrets. Fed. R.Civ.P. 26(c)(7). Nonetheless, entry of a protective order does not depend on a legal privilege. *Farnsworth,* 758 F.2d at 1548. A party requesting a protective order has the burden of demonstrating good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" in order to obtain entry of the protective order. *U.S. v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978).

## III. DISCUSSION

By this Motion, Plaintiff/Counter–Defendant Rosenbaum asks the court for entry of an order compelling B & P to produce certain documents requested in Rosenbaum's Fourth and Seventh Requests for Production of Documents propounded on October 15, 2009, and November 18, 2009, respectively, to which pertinent responses

were served on November 19, 2009 (Fourth Request) and December 18, 2009 (Seventh Request). (DE 124 at 3.)[7] Specifically, Rosenbaum's prayer for relief involves the following discovery issues: (1) Request No. 1 of the Fourth Request for Production (pertaining to information contained in Blackberry telephones used by the attorneys departing B & P, which information was downloaded by B & P into its computer server and erased from the Blackberrys), and (2) eight Requests comprising the Seventh Request for Production, which seek personnel records for the departing attorneys and staff. Each of these Requests or categories of Requests, together with the arguments and objections raised as to each, shall be addressed in turn.

As a preliminary matter, and before addressing the specific Requests and the briefing thereon, the court disposes of Rosenbaum's argument of waiver as it pertains to B & P's eventual response to a portion of Request No. 1 of the Fourth Request for Production. This Request seeks "[a]ll documents containing data on the Blackberrys of the departing attorneys that were erased, deleted or otherwise removed from each departing attorneys [sic] Blackberry by the Becker & Poliakoff, P.A., IT. Department, after each departing attorney resigned their employment with Becker & Poliakoff, PA" (DE 124–3 at 1.) Rosenbaum contends that because B & P's November 19, 2009, original response did not assert that "firm contacts and emails" removed from the departing attorneys' Blackberry telephones were "proprietary

occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure." *Id.*

**6.** Fifth Circuit decisions as they existed as of the close of business on September 30, 1981, are binding precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of*

*Prichard, Alabama,* 661 F.2d 1206, 1207 (11th Cir.1981).

**7.** As a result of the parties' stipulations on briefing and Orders entered thereon, the Motion at bar only recently became ripe for adjudication.

to B & P," but first objected on that basis by way of subsequent correspondence on December 23, 2009, that such objection is waived under S.D. Fla. L.R. 26.1.G.3. (DE 124 at 5.)

 As noted in the court's April 13, 2010, Order (DE 189), "[t]he district court enjoys wide discretion in applying and enforcing its own local rules." *In re De-Pugh*, 409 B.R. 125, 142 (S.D.Tex.2009) (noting the wide latitude district courts have in applying and enforcing their own local rules); *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir.1990) ("We recognize that district courts have considerable latitude in applying their own rules."); *City of Waltham v. United States Postal Service*, 11 F.3d 235, 243 (1st Cir.1993) (indicating district court has "authority to interpret its own local rules in nontechnical ways and to avoid [nonsensical] results"). A basic tenet of statutory construction provides that the court should not confine itself to examining a particular provision in isolation, but instead must read the words of a provision in the context "and with a view to its place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 [120 S.Ct. 1291, 146 L.Ed.2d 121] (2000). "A court must therefore interpret the statute [Rule] 'as a symmetrical and coherent regulatory scheme' ... and 'fit, if possible, all parts into a harmonious whole.'" *Id.*, (citation omitted); *see also Hohn v. United States*, 524 U.S. 236, 242 [118 S.Ct. 1969, 141 L.Ed.2d 242] (1998) (stating "[w]e are reluctant to adopt a construction making another statutory provision superfluous."); *F.T.C. v. University Health, Inc.*, 938 F.2d 1206, 1216 (11th Cir.1991) (noting that a statutory subsection may not be considered in a vacuum, but must instead be

considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter)." (DE 189 at 8–9); *see also* DE 189 at 8–15 (containing analysis of construction, application and enforcement of local rules on discovery issues). Specifically, if a litigant is confused, as B & P initially claims, to impose waiver is a draconian measure.

 Rosenbaum's reading of Local Rule 26.1.G.3 as requiring waiver of an objection for failure to set it forth at the outset in the responding party's initial response to a request is simply too severe and does not abide by the "letter and spirit of the discovery rules." *Taylor v. Florida Atlantic Univ.*, 132 F.R.D. 304, 305 (S.D.Fla.1990). Accepting Rosenbaum's strict interpretation would not only be *contra* to this court's analysis of the interconnection between Federal Rules of Civil Procedure and this District's Local Rules as enunciated in the afore mentioned April 13th Order, but, as stated in said Order, would also nullify the intended salutary effect of Local Rule 7.1.A.3. *See* DE 189 at 10–15 (addressing interpretation of Local Rules). Said differently, the purpose and intent of conferring under Local Rule 7.1.A.3 is precisely to promote judicial economy by avoiding court intervention.

Here, B & P raised its objection based on proprietary interest by addressing it in pre-motion correspondence once Rosenbaum pointed out the meaning of "documents" as including data contained in the Blackberry telephones used by the departing attorneys.[8] (DE 124–5 at 12.) Consequently, and concordant with the afore mentioned April 13th adjudication, the court finds that because Local Rule 26.1.G.3 "must not be read in isolation and must be construed in light of the Local

---

8. The Motion at bar was filed on December 31, 2009; eight days before, on December 23rd, B & P raised the objection at issue in an e-mail.(DE 124–5 at 12.)

Rules as a whole, and in particular those Local Rules of the same or similar nature [citing *Hohn,* 524 U.S. at 242, 118 S.Ct. 1969; *University Health,* 938 F.2d at 1216]" (DE 189 at 9), B & P's articulation of a response (even if indicating "confusion"), and, a subsequent objection, upon clarification, to Request No. 1 has three important effects: (1) it gives purpose to, and denotes the result of, Local Rule 7.1.A's otherwise superfluous requirement that the moving party confer with opposing counsel prior to the filing of a discovery motion and that the parties attempt to resolve their differences without court intervention; (2) because of B & P's clarification of its position, it does not trigger waiver under S.D. Fla. L.R. 26.1.G.3; and (3) it allows subsequent analysis of whether or not B & P sufficiently addressed its "proprietary" objection in motion practice. *See Taylor v. Florida Atlantic Univ.,* 132 F.R.D. at 305 (encouraging counsel's working together on discovery matters as part of "letter and spirit of the discovery rules of the Federal Rules of Civil Procedure and the Local Rules"). Therefore, guided by the broader context of the Local Rules as a whole, along with the specific facts of this matter and the overall contacts between the parties in the very extensive context of discovery herein, the court finds that Local Rule 26.1.G.3's waiver provision is not triggered in this instance.

Additionally, and in accordance with the determination in the April 13, 2010, Order, the court finds on the issue of waiver that given "the customary practice that has developed in this District with regard to matters of discovery ... [that the denial to find waiver as indicated in the foregoing paragraph] has the added benefit of allowing for the exercise of the court's discretion consistent with the Eleventh Circuit's strong policy of resolving issues on the merits, rather than on the basis of procedural technicalities." (DE 189 at 15.) Ac-

cordingly, the court finds B & P's proprietary objection raised during the parties' pre-motion exchange in connection with Request No. 1 of Rosenbaum's Fourth Request for Production to be sufficient to avoid waiver under Local Rule 26.1.G.3 and **DENIES** Rosenbaum's request to find waiver.

■ The court also deems it appropriate at the onset to address B & P's contention that the Motion to Compel does not satisfy the requirement of S.D. Fla L.R. 26.1.H.2. (DE 145 at 3–4, § II.) According to B & P's strict interpretation, Local Rule 26.1.H.2 requires the movant to set forth "in immediate succession" in the motion the specific request, the objection and pertinent grounds, and the reasons to support the motion to compel. (DE 145 at 3, § II.) B & P takes the position that "Rosenbaum failed to comply with Local Rule 26.1.H.2 in all respects...." (DE 145 at 4, § III.) After a careful review of the Motion to Compel and its Exhibits, however, the court finds that Rosenbaum's attaching to his Motion a complete copy of the Requests for Production at issue and answers thereto immediately below each request, along with a systematic briefing of the arguments as to each particular Request, suffices for satisfying Local Rule 26.1.H.2's requirements. *See* DE 124–3 (containing Fourth Request for Production and responses thereto) *and* DE 124–4 (same for Seventh Request for Production); *see also* DE 124 at 3–10 (setting forth delineated, individual arguments). Therefore, and once again taking a practical approach to the Local Rules as set forth above, the court finds Rosenbaum's presentation sufficient to satisfy the requirements of Local Rule 26.1.H.2.

Finally, the court notes that at this time Rosenbaum has answered the First Amended Counterclaim and asserted affir-

mative defenses thereto. Consequently, any contention by B & P that "Rosenbaum has not yet filed his answer to the Counterclaims," and that he has not "yet asserted any affirmative defenses to the claims against him" (DE 145 at 2, § I), is moot and, therefore, inapplicable to the briefing before the court. Thus, any allegation by Rosenbaum as to the discovery sought being necessary to support his contentions or defenses, will be addressed on the basis of individualized representations.

### a. *Request No. 1 of Rosenbaum's Fourth Request for Production.*

As above indicated, Request No. 1 of Rosenbaum's Fourth Request for Production seeks data downloaded by B & P's I.T. Department from the departing attorneys' Blackberrys, which information was then deleted from the Blackberrys after the downloading. Initially, B & P objected to Request No. 1 on the basis of confusion. Confusion resolved itself in the post-Motion correspondence. In its place, B & P raised a proprietary objection. The court has already addressed the claim of waiver and will now move to the substantive production objection.

The proprietary objection related to client contacts and perhaps e-mails as referenced in said post-Motion correspondence. A fair reading of the Response and Reply herein causes the court to conclude that the proprietary objection became satisfied by bringing the production of the documents at issue under the parties' extant confidentiality stipulation. *See* DE 145–5 at 2 (indicating agreement on pro-

duction, inclusion of client contacts into terms of confidentiality stipulation). Thus, what remains is B & P's qualified production, which boils down to (1) the change in the printout of the departing attorneys' calendar format; (2) the time period B & P selected for the entire production; and (3) its persistence in not producing any documentation from attorneys Oliver's and Zoberg's Blackberrys.

As to the calendar data, Rosenbaum indicates what B & P "produced [the information requested] in such a fashion as to render [it] useless."[9] (DE 153 at 8, § E.) Rosenbaum explains that "the printing of the Microsoft Outlook calendars [downloaded from the departing attorneys' Blackberrys] was manipulated by B & P to render a printed calendar on which the details of each entry would not appear." (DE 153 at 8–9, § E.) As an example, he provides a copy of his own calendar to show the absence of detail.[10] (DE 153–5.) The court's review of the Exhibit to Rosenbaum's Reply shows that the sample calendar copy provided is not fully readable. Hence, the court agrees with Rosenbaum that the calendar documents as produced are deficient.

Further, on the issue of the time period for the Blackberry contents production, B & P chose its own time frame, i.e., June of 2008, through December of 2008, as applicable to the Blackberry contents production because allegedly Rosenbaum did not provide a pertinent time period. (DE 145 at 9, § B; DE 145–7.) The "Definitions and Instructions" section for the Fourth Request for Production, however, clearly

---

9. Rosenbaum also comments that the "useless" production resulted in a copying charge to him in the amount of $87.00. (DE 153 at 8, § E.)

10. Rosenbaum contends that "[o]f the **349 pages of documents produced in response to the Fourth Request for Production, 319 pages**

consisted of calendars that serve no purpose other than to establish as blatantly false B & P's repeated assertions that calendars were deleted from the B & P computer system by Rosenbaum and other departing attorneys." (DE 153 at 9) (emphasis in original.)

states that the time period "for each document request, unless otherwise specified, shall be August 4, 2008, to the date of [B & P's] production." (DE 124–1 at 7, ¶ 19.) Rosenbaum's Motion briefing is silent as to the time frame selected by B & P, leading the court to conclude that he is satisfied with the redefined time range.

▮ Rosenbaum also argues that there was no Blackberry information at all provided for attorneys Stuart Zoberg and Michael Oliver (DE 153 at 10), to which B & P indicates in its Response that it considers Messrs. Zoberg and Oliver to be "a different matter" because they resigned after the date in which Rosenbaum and the other departing attorneys left B & P (DE 145 at 6). B & P takes the position that "Mr. Zoberg did not resign until August 14, 2008 and Mr. Oliver did not resign until October 3, 2008," adding that "B & P is not claiming damage for Mr. Zoberg and Mr. Oliver's defection since they were never part of the West Palm Beach group of attorneys and staff who abruptly resigned from B & P. . . ." (DE 145 at 6–7.) Rosenbaum replies by pointing out that "B & P has repeatedly injected both Messrs. Zoberg and Oliver into this case and has never posed a formal objection to discovery regarding either of these individuals." [11] (DE 153 at 10.)

First of all, a review of the "Definitions and Instructions" for the Fourth Request for Production shows that Messrs. Oliver and Zoberg are listed as "departing attorneys" for purposes of that Fourth Request. (DE 124–1 at 6, ¶ 13.) Second, despite B & P's alleging that attorneys Oliver and Zoberg resigned after August 4, 2008 (the date in which Rosenbaum and other departing attorneys and staff left B & P), there is neither an explanation of the significance of their later date of departure nor does B & P disavow the alleged relationship between these two attorneys' leaving and the damages sought through B & P's Counterclaim. Third, even though B & P states that it is not claiming damage for Mr. Zoberg and Mr. Oliver's defection," the fact remains, as Rosenbaum points out, that (1) Rosenbaum identified them as departing attorneys; (2) B & P is alleging damages as a result of individuals leaving B & P in connection with Rosenbaum's departure, and (3) B & P includes Messrs. Oliver's and Zoberg's names in B & P's Rule 26 Disclosure as witnesses, and in its own discovery requests. Thus, the court finds that attorneys Oliver and Zoberg are within the category of "departing attorneys" for purposes of this litigation, regardless of the date on which they left B & P.

Accordingly, the prayer for a production of fully readable departing attorneys' calendars, along with any other contents of said departing attorneys' Blackberry, including the "firm contacts and emails," and all Blackberry contents for attorneys Oliver and Zoberg under Request No. 1 of the Fourth Request for Production is **GRANTED.** B & P shall produce the aforesaid items for the period between June 2008 through December 2008, within fifteen (15) days from the date of this Order. Additionally, B & P shall not charge Rosenbaum for any production-related charges in connection with a renewed production of the currently non readable departing attorneys' calendars, or, alternatively, B & P shall cancel the related origi-

---

**11.** This reference is clarified in Rosenbaum's Reply when he explains that Mr. Oliver is a listed witness in B & P's Rule 26 Disclosures, and identified as a "departing attorney" in B & P's First, Second and Third Requests for Production. *See* DE 153 at 6; DE 153–2 at 4, 18, 31 (corroborating Rosenbaum's representation on attorney Oliver's inclusion in discovery). The court notes that the same is true for Mr. Zoberg. (DE 153–2 at 4, 18, 31.)

nal copying charges for said calendars and submit a billing for the corrected production.

#### b. *Requests No. 1 Through 8 of Rosenbaum's Seventh Request for Production.*

These Requests ask for personnel-related records of the departing attorneys and departing staff, which encompass Paid Time Off (PTO), pay rates, post-employment communications with B & P's Human Resources department (including Employee Exist Checklists), and final paychecks-related information. (DE 124 at 6; DE 124–4.) B & P objects to each and every one of the Requests on the grounds of their being "irrelevant, immaterial and unlikely to lead to the discovery of admissible evidence." (DE 124–4.) Rosenbaum indicates in his Reply that the production as to Request No. 4 (pay records of departing staff) and Request No. 6 (letters to departing staff sent upon their resignation and the Employee Exit Checklists for them) has been satisfied. (DE 153 at 7, nn. 1, 2.) Therefore, the Motion as it relates to Requests Nos. 4 and 6 is **DENIED AS MOOT.**

█ Requests Nos. 1–3, 5 and 7–8 relate to PTO for the departing attorneys and staff (Nos. 1 and 2); the pay rates for the departing attorneys (No. 3); every letter transmitted to a departing attorney from Jason Lennon or any other B & P employee transmitting the Employee Exit Checklist, along with each Employee Exit Checklist sent and any Checklist signed and returned by a departing attorney (No. 5); [12] and the last paychecks for the departing attorneys and staff showing statements of earnings, deductions and taxes (Nos. 7 and 8).

Rosenbaum takes the position that the PTO and payroll records (Requests Nos. 1–3 and 7–8) are relevant discovery because "B & P placed its financial condition at issue" by claiming lost revenues and profits, which include, *inter alia*, incurring significant expenses to stabilize the West Palm Beach office, incurring, among other expenses, overtime and attorney recruitment costs. (DE 124 at 8–9, §§ A.i & ii.) Rosenbaum goes on to explain that the relevancy of the PTO and payroll records is directly related to B & P's damage claims, "and specifically, its claim of lost revenues." (**DE** 124 at 8, § A.i.) Rosenbaum argues that the "money B & P was no longer expending on salaries and benefits for the departing attorneys and staff . . . . is vital to determining the degree to which the amount B & P claims it expended stabilizing the West Palm Beach office was offset by the amounts it was no longer paying the departing attorneys and staff in payroll and benefits." (DE 124 at 8–9, § A.i.) Further, Rosenbaum contends "that B & P has already penalized the departing attorneys and staff for resigning without notice, and is now seeking to impose an additional penalty through a damage award for alleged lost profits." [13] (DE 124 at 9, § A.ii.)

---

12. Even though Rosenbaum complained that no records for Cheryl Rosenbaum were provided in connection with Request No. 5, B & P makes it clear that it has nothing to produce for Ms. Rosenbaum. (DE 145 at 8; DE 145–4 at 2.) Therefore, that portion of Request No. 5 is **DENIED AS MOOT.**

13. The reference to penalizing departing attorneys and staff relates to the fact that B & P's Employment Termination Policy causes forfeiture of all unused PTO to those who do not give "appropriate notice." (DE 124 at 9; DE 124-6 at 2.) B & P does not require "advance notice" of resignation, but requests "at least ten (10) working days written notice of resignation from nonexempt employees and thirty (30) working days notice from exempt employees." (*Id.*) Failure to give the

B & P maintains that even though it considers Requests 1 and 2 irrelevant because there are no claims against the individual departing attorneys or staff, it has produced the requested information. (DE 145 at 6.) To support its compliance, B & P provides the Declaration of Ann Mezadieu, B & P's Human Resources Director. (DE 145–6.) Ms. Mezadieu indicates in her Declaration that in connection with Requests 1 and 2 she "submitted all documents that pertained to PTO both what the attorneys and staff earned and what they used. B & P's records were kept on annual calendar cards that indicated what the employee earned each year, rolled over time and time used." (DE 145–6 at 3, ¶ 5.) She goes on to explain that B & P's ULTI-PRO human resources and payroll system "does not and never has [been used] for capturing accrued PTO," and that B & P started "capturing PTO balances in B & P's time and attendance system [by way of a system identified as Ultimate Time and Attendance]" that was not implemented until after Rosenbaum and the departing attorneys and staff left B & P. (DE 145–6 at 3, ¶ 6.) Ms. Mezadieu further declares that to her "knowledge, B & P does not have any additional records or documents responsive to request nos. 1 and 2 . . . ." that relate to PTO. (DE 145–6 at 3, ¶ 7.)

In his Reply, Rosenbaum points out that the records provided for Requests 1 and 2 "were merely copies of calendars with handwritten notes and requests for time off," and that those records "do not, however, reflect *accrued* PTO." (DE 153 at 4, § A) (emphasis in original). Rosenbaum further alleges that the records are "incomplete because they do not include all of the departing attorneys and staff." (*Id.*) He also explains that the "annual calendar cards" provided do not "indicate 'what the employee earned each year, rolled over-

requested "advance notice" renders the em-

time, and time used' " as contended by Ms. Mezadieu in her Declaration. (DE 1253 at 4–5, § A; DE 145–6 at 3, ¶ 3.) As an example, Rosenbaum provides a copy of his own "2008 Absentee Calendar" included in the production (DE 153–1) to establish that it does not show his yearly earnings or his "rolled over time." (DE 153 at 5, § A.)

Based on the briefing and evidence presented, the court finds that B & P's production in connection with Requests Nos. 1 and 2 is insufficient. It is difficult to fathom that in today's computerized world a well-established, prominent law firm as B & P is incapable of knowing how much PTO time its employees accrued, yet be able to keep track of time taken and, presumably, pay for it. Accordingly, the Motion is **GRANTED** as to Requests Nos. 1 and 2. B & P shall produce all data reflecting the information requested in these two Requests within fifteen (15) days of the date of this Order.

B & P's only statements as to Request No. 3 (seeking information on departing attorneys' rate of pay) and Request No. 7 (asking for copies of the departing attorneys' last paycheck) pertain to the already mentioned disclaimer for attorneys Oliver and Zoberg. (DE 145 at 8.) Rosenbaum points out that "departing attorneys and staff was defined to include all of the attorneys and staff from the West Palm Beach office of B & P, as well as Fort Lauderdale attorneys Stuart Zoberg and Michael Oliver," noting that "[b]y its own admission, B & P is seeking damages from Rosenbaum for 'Mr. Zoberg's actions in connection with downloading B & P documents from B & P's computer system prior to his resignation from B & P." (DE 153 at 6.) The court reiterates its finding as set forth above in connection with Request No. 1 of

ployee "ineligible for rehire." (*Id.*)

the Fourth Request for Production that Messrs. Oliver and Zoberg are "departing attorneys" for purposes of this litigation. Further, the court finds that Rosenbaum has sufficiently argued the relevancy of attorneys Oliver and Zoberg's rate of pay and their last paycheck information to B & P's Counterclaim damage allegations and Rosenbaum's affirmative defenses thereto. Indeed, B & P's silence on these issues may be taken as an adverse inference that, as Rosenbaum contends, discovery related to this inquiry could disclose available defenses against B & P's alleged lost profits and revenues, as well breach of contract Counterclaim contentions.

Further, B & P does not present any argument related to Request No. 5, which refers to communications with the departing attorneys by Jason Lennon or other B & P employee related to the Employee Exist Checklists. Other than B & P's indication when initially responding to the Seventh Request for Production that this Request is "irrelevant, immaterial and unlikely to lead to the discovery of admissible evidence," there is no briefing by B & P in rebuttal of Rosenbaum's position that "B & P falsely claims that '[t]here are no allegations in either the Complaint or the counterclaims (or any of the affirmative defenses thereto) which mention or even remotely touch upon **why** the departing attorneys [and staff] resigned from B & P.'"[14] (DE 124 at 10) (emphasis in original). Rosenbaum relates this Request to B & P's contention that Rosenbaum solicited B & P employees to join Rosenbaum at KGR, "cultivat[ed] employee discontent in B & P's West Palm Beach office," and orchestrated a "mass resignation" without notice to B & P. (Id) In this instance, the court deems it proper to exercise its wide discretion and to apply the broad concept of discovery to the information sought. Therefore, the court finds the data covered by Request No. 5 to be relevant to the litigation because the contents of the communications and checklists involved in this Request could possibly bear on the issue, *inter alia*, of the allegations of breach of contract against Rosenbaum. Thus, the Motion is **GRANTED** as to Request No. 5 for all departing attorneys, including Messrs. Oliver and Zoberg. B & P shall produce all information sought in this Request within fifteen (15) days of the date of this Order.

Also, for Requests Nos. 1–3 and 7 as they relate to Messrs. Oliver and Zoberg, B & P re-alleges as to these attorneys that they are "a different matter" because their resignations occurred after August 4, 2008, when Rosenbaum and the other departing attorneys and staff left B & P. (DE 145 at 6–7, 8, 9.) B & P adds that it has no claims against Messrs. Oliver and Zoberg. (DE 145 at 7.) Interestingly, B & P appears to contradict itself partially by admitting that "it has been damaged by Mr. Zoberg's actions in connection with downloading B & P documents from B & P's computer system prior to his resignation from B & P." (DE 145 at 7, n. 3.) Further indicia of contradiction appears in the already indicated fact of B & P's listing of attorneys Oliver and Zoberg as witnesses in its Rule 26 Disclosures and as "departing attorneys" in B & P's First, Second and Third Requests for Production. (DE 153–2 at 4, 18, 31.) Hence, the court finds relevant to this matter Requests Nos. 1–3 and 7 as they pertain to Messrs. Oliver and Zoberg. As a result, this part of the Motion is **GRANTED,** and B & P shall produce

---

**14.** As earlier noted, the parallel information for the departing staff, contained in Request No. 6, has been produced.

the material in question within fifteen (15) days of the date of this Order.

Finally, B & P presents no argument relative to Request No. 8, which seeks a copy of the last paycheck and accompanying statement of earnings, deductions and taxes for the departing staff. The court incorporates herein its foregoing analysis on Rosenbaum's contention of the relevancy of the payroll data to B & P's Counterclaim damages sought for lost profits and revenue. Therefore, the Motion is **GRANTED** as to Request No. 8. B & P shall produce the information requested for all departing staff within fifteen (15) days of the date of this Order.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Rosenbaum's Motion to Compel (DE 124) is **GRANTED IN PART AND DENIED IN PART** in conformance with the discussion, findings and directives herein.